# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
Northern Division

| | |
|---|---|
| GROUP HOME ON GIBSON ISLAND, LLC, 1812 Skippers Row, Gibson Island, MD 21056,<br><br>Plaintiff,<br><br>v.<br><br>GIBSON ISLAND CORPORATION, 534 Broadwater Way, Gibson Island, MD 21056,<br><br>Serve: Matthew L. Kimball<br>Niles, Barton & Wilmer, LLP<br>111 S. Calvert Street, Ste. 1400<br>Baltimore, MD 21202,<br><br>Defendant. | Civil Action No. _____ |

## COMPLAINT

1. This civil rights lawsuit seeks to enjoin the illegal and discriminatory conduct of the Gibson Island Corporation undertaken to prevent the establishment of an assisted living group home for seniors with disabilities on privately-owned land on Gibson Island, Maryland.

## INTRODUCTION

2. Responding to the need for affordable, quality assisted living for seniors with disabilities in Maryland—necessitated by the aging of the Baby Boomers' generation and the national movement away from institutional settings like nursing homes—Plaintiff Group Home on Gibson Island, LLC ("Group Home") purchased a house (the "Banbury Property") on Gibson Island, an exclusive community on the Magothy River in Anne Arundel County, intending to use it as a state-of-the-art, state-licensed group home for nine elderly individuals who need assistance

with such activities of daily living as bathing, dressing, and eating.  Gibson Island offers a tranquil setting appropriate for an assisted living group home but is close enough to Baltimore, Annapolis, and Washington, DC that residents moving from those cities can remain connected to family members, support networks, health care providers, and cultural attractions.

3. Defendant Gibson Island Corporation ("GIC") acts as a homeowners' association ("HOA") for the residents of Gibson Island.  Automobile and truck access to Gibson Island is exclusively via a man-made causeway controlled by a gatehouse staffed 24 hours per day by employees of Defendant.  Passage is permitted only to Gibson Island residents and their authorized guests.

4. GIC has adopted guiding principles framed as the "Gibson Island Community Vision," pursuant to which it makes clear that it seeks "to retain and attract Residents … of high quality who share in our vision."  GIC's words and actions have made clear that it believes individuals with disabilities who need assistance with their activities of daily living, such as Plaintiff's prospective residents, and those who provide such services, do not have such qualities.

5. In its role as an HOA, the Corporation seeks "to retain and attract Residents … of high quality who share in [its] vision" by enforcing the terms of deeds and agreements related to Gibson Island properties.

6. When Group Home sought to begin construction necessary to make the Banbury Property suitable to serve as a quality assisted living group home, GIC notified Group Home that "commercial uses" are not permitted at the Banbury Property under the governing deed and agreement.

7. GIC also unlawfully interfered with Group Home's rights by denying some of its contractors access to Gibson Island and the Banbury Property and intimidating other contractors that did manage to access the property.

8. By attempting to prevent a group home for seniors with disabilities from operating at the Banbury Property, GIC injures Group Home and the seniors with disabilities it seeks to serve, in violation of the Fair Housing Act, 42 U.S.C. § 3604(f).

9. In response to Group Home's continued efforts to secure the rights of seniors with disabilities to live in a home of their choice on Gibson Island, GIC has retaliated by threatening, coercing, interfering with, or intimidating Group Home and its agents, in violation of the Fair Housing Act, 42 U.S.C. § 3617.

## JURISDICTION AND VENUE

10. Jurisdiction is conferred on this Court by 42 U.S.C. § 3613(a) and 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a)(4), 1367(a), and 2201.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), as the claims arise in Anne Arundel County, Maryland.

## PARTIES

12. Group Home on Gibson Island, LLC is a Maryland limited liability company in good standing established to provide quality residential support for nine seniors with disabilities. Group Home will provide the individuals with disabilities who live there with assistance with activities of daily living, thus helping them avoid institutional placements. A building permit was approved for the Banbury Property in January 2020 to convert the existing single-family dwelling on the property to an assisted living group home for nine seniors with disabilities. All of the prospective residents of the group home at the Banbury Property will have disabilities and are thus protected from discrimination on that basis by the Fair Housing Act. By virtue of its association with those residents, Group Home is similarly protected against discrimination because of disability.

13. Gibson Island Corporation is a corporation organized and existing under the laws of the State of Maryland that holds title to all property on Gibson Island other than homes and lots owned by individual property owners. GIC maintains Gibson Island's common areas such as roadways, beaches, the facilities leased to the Gibson Island Club, and areas of undeveloped woodlands. The individual property owners on Gibson Island own all the stock of GIC and have access to the facilities operated by GIC as a matter of right upon payment of required fees. GIC's 17-member Board of Directors oversees a private security force, a 24-hour manned gatehouse, a service department responsible for all GIC maintenance and contracted residential work, and a full-service yacht yard open to the public.

## FACTUAL BACKGROUND

14. The Banbury Property is located at 1753 Banbury Road. It is part of Plat A on Gibson Island, which was first conveyed by GIC on July 7, 1925, under a Deed and Agreement containing restrictive covenants.

15. Among those restrictive covenants is a requirement that the land in the tract, including what is now the Banbury Property, be used only for private residential purposes and that only single-family residences may be built thereon. The Deed and Agreement also lists a variety of businesses and commercial uses not permitted in the tract, including slaughterhouses, brass foundries, cattle yards, cream of tartar manufacturing plants, and bone boiling.

16. A single-family home was built on the Banbury Property in the 1970s and the Banbury Property has remained in use as a residence ever since. In 2005, the house built in the 1970s was torn down and a modern, three-story house was completed on the property in 2007.

17. Group Home obtained title to the Banbury Property on March 4, 2020.

18. On November 22, 2019, prior to Group Home obtaining title to the Banbury Property, the previous owner submitted an application for a building permit from the Anne

4

Arundel County Department of Inspections and Permits for the conversion of the single-family dwelling on the Banbury Property to an assisted living group home for nine seniors with disabilities; construction of interior improvements related to accessibility, an accessibility ramp, accessible parking, and an accessible entrance; and removal of certain decorative garden walls on the property. The application for the permit was made with the intent that it would benefit Group Home and the permit runs with the land. The permit was approved on January 16, 2020.

19. Public record of the application for a building permit and of the permit's approval has been available since, respectively, the permit was applied for and issued.

20. There has been no appeal of the issuance of the building permit.

21. The renovations authorized by Group Home's building permit are necessary to convert the existing single-family home on the Banbury Property to a group home for up to nine seniors with disabilities who will live in the home in a family setting and receive assistance with activities of daily living. The services the individuals with disabilities will receive in the group home are similar to those that might be sought by seniors or younger people with disabilities in their own homes.

22. To meet Group Home's goal of welcoming residents by May 1, 2020, construction of the necessary improvements set forth in its building permit began on or about March 4, 2020.

23. On March 25, 2020, Group Home's managing member, Craig Lussi, received a letter via email from Craig D. Roswell, Esquire, identifying himself as counsel to GIC and stating that the building permit's identification of a group home as the intended use of the property "makes clear a commercial use if being intended" for the Banbury Property but that the Gibson Island Deed and Agreement applicable to the Banbury Property "does not allow commercial uses…except in very limited circumstances which do not apply here." On that basis,

Mr. Roswell stated that GIC would "not allow this commercial development to proceed" and that any contractors seeking to work at the Banbury Property would "be stopped at the gate and turned away."

24. The intended use of the Banbury Property as an assisted living group home for seniors with disabilities is a residential use and meets the definition of "group home" in the Anne Arundel County Code, § 18-1-107(57).

25. The Banbury Property is in an R-1, residential zoning district, and the Anne Arundel County Code specifically lists group homes as a permitted use in any residential zone. *See* Anne Arundel Cty. Code § 18-4-106.

26. Nowhere in the Deed and Agreement applicable to the Banbury Property are group homes listed as a prohibited use at the property.

27. The following day, on March 26, 2020, Mr. Lussi received a letter from GIC's Board President James P. Daly, Jr., confirming that GIC was taking action to terminate all work pursuant to Group Home's building permit, based on GIC's assertion that the assisted living group home planned for the Banbury Property would be a commercial use in violation of the applicable Deed and Agreement.

28. Mr. Daly also added a new, pretextual reason for GIC's refusal to allow the work authorized by Group Home's building permit, stating that Group Home had not obtained the approval of GIC's Architectural Review Committee for the planned renovations, which he claimed was required pursuant to architectural covenants that apply to changes in Gibson Island properties.

29. Mr. Daly informed Mr. Lussi that, if Group Home wished to proceed, it should make a submission to GIC that included all of the changes to the Banbury Property that Group Home intended to make, as well as the "impacts" Group Home's proposed project was likely to

have, including "how many residents will live in the home, how many individuals the project will employ, what their hours of employment will be, what kind of traffic is to be expected…how many parking spaces will be required on the property, any proposed changes to the driveway and driveway entrances, and, your projected need for emergency services."

30. Mr. Daly stated that Group Home had "a responsibility to provide the details of [its] project to the Corporation so that it can in turn discharge its obligations under the Deeds and Agreements," but he did not indicate how any of the "impacts" listed in his letter are governed by the applicable Deed and Agreement and/or within the purview of the Architectural Review Committee. Nor did he explain why Group Home was required to inform the Architectural Review Committee of "impacts" such as its "projected need for emergency services" when no other property owner on Gibson Island is required to do so.

31. Indeed, nothing in the Deed and Agreement specifically requires that property owners obtain architectural review for interior renovation projects and most of the work at the Banbury Property pursuant to the issued building permit is interior.

32. Starting on March 25, 2020, and continuing until the date of the filing of this Complaint, GIC has taken the following steps to interfere with the rights of Group Home to perform properly permitted work for the conversion of a single-family dwelling to an assisted living group home for nine seniors with disabilities:

    A. On Wednesday, March 25, 2020, GIC directed the Gibson Island Police Chief, Chris Sperry, to deny access through the Gibson Island Gatehouse to any contractor working at the Banbury Property;

    B. On Thursday, March 26, 2020, at approximately 7:45 a.m., GIC directed a Gibson Island police officer to trespass onto the Banbury Property to direct employees of

7

Absolute Systems Engineering who were engaged at work on the property to cease their activities and leave Gibson Island, and she attempted to escort them off the Island;

  C. Also on Thursday, March 26, 2020, contractors with Bay Area Mechanical, Buddy's Plumbing, Inc., American Builders Corp,. and Bay HVAC were all directed that they were not allowed to proceed onto Gibson Island once they identified that they were intending to proceed with work on the Banbury Property. Thus, the only way to get these contractors to the Banbury Property was for Mr. Lussi to physically drive them individually to the Banbury Property and drive their commercial vehicles to the Banbury Property for the necessary work under Group Home's building permit to proceed;

  D. On Friday, March 27, 2020, Mr. Lussi had to enlist the assistance of the Maryland State Police Barracks Commander, who worked with the Gibson Island security guards/police officers, including Chief Sperry, to educate them that they were not empowered to block contractors or others from accessing the Banbury Property without a court order or other authority to the contrary;

  E. On Monday, March 30, 2020, as Mr. Lussi was transporting contractors hired by Group Home, he was stopped at the Gibson Island Gatehouse by three officers with the Anne Arundel County Police Department, together with two Gibson Island police officers and Mr. Daly, and again informed that the contractors were not allowed access to Gibson Island to perform work subject to the building permit issued for the Banbury Property. Following this initial confrontation and the intercession of the Maryland State Police Barracks Commander, the contractors were permitted access to Gibson Island and the Banbury Property, but only as passengers in Mr. Lussi's personal vehicle;

   F. On Tuesday, March 31, 2020, as Mr. Lussi was transporting contractors hired by Group Home to the Banbury Property, he was stopped at the Gibson Island Gatehouse by Chief Sperry, who stated that no contractors were allowed onto Gibson Island in Mr. Lussi's vehicle or their own vehicles.  Therefore, Mr. Lussi began ferrying contractors to the Banbury Property by boat; and

   G. Also on March 31, in an effort to intimidate the contractors hired to perform work pursuant to Group Home's building permit, GIC delivered a letter to American Builders Company, Inc., one of the contractors working at the Banbury Property, directing them to cease and desist work at the property or "risk trespass if you continue entering the Island by boat or otherwise without prior authority from Gibson Island Corporation."

33. Pursuant to the Deed and Agreement governing the Banbury Property, each property owner has the right to use the roads for ingress and egress.  Nothing in the Deed and Agreement permits GIC to restrict access to the Banbury Property by contractors hired by Group Home to perform work there.

34. On information and belief, GIC intends to continue its efforts to prevent Group Home from completing the work authorized by its building permit and opening a state-licensed assisted living group home for individuals with disabilities.

35. With GIC's ongoing interference, it remains uncertain when the necessary renovations for the benefit of Group Home's nine intended residents will be complete, and thus when Group Home's intended residents will be able to exercise their rights under the Fair Housing Act.

**Injury Caused by Defendants' Discriminatory Practices**

36. Directly and through its agents, GIC has engaged in a course of discriminatory conduct against Group Home and its intended residents.

37. In doing the acts or in omitting to act as alleged in this Complaint, each employee or officer of GIC was acting in the course and scope of his or her actual or apparent authority pursuant to such agencies, or the alleged acts or omissions of each employee or officer as agent were subsequently ratified and adopted by GIC as principal.

38. GIC and its agents knew that Group Home would be providing housing and services for people with disabilities and acted intentionally and willfully, with callous and reckless disregard for the statutorily protected rights of Group Home and its residents, entitling Plaintiff to punitive damages.

39. Group Home has suffered, and is continuing to suffer, damage to its Fair Housing rights and to the Fair Housing rights of its prospective residents as the direct and proximate result of GIC's actions, as GIC has intentionally discriminated against Group Home and its intended residents. Therefore, Group Home is entitled to compensatory damages.

40. Group Home has no adequate remedy at law. It is now suffering and will continue to suffer irreparable injury from GIC's acts and its pattern or practice of discrimination because of disability unless relief is provided by this Court. Accordingly, Group Home is entitled to injunctive relief.

## CAUSE OF ACTION

### Unlawful Discrimination Under the Fair Housing Act

41. Group Home realleges and incorporates by reference paragraphs 1-41 above, as if fully set forth herein.

42. By the actions described above, GIC has violated Group Home's rights under the federal Fair Housing Act, 42 U.S.C. § 3601, *et seq.*, and implementing regulations, by:

   a. Making unavailable or denying a dwelling to persons because of disability, in violation of 42 U.S.C. § 3604(f)(1) and implementing regulations;

   b. Discriminating on the basis of disability in the terms, conditions, or privileges or the provision of services or facilities in connection with the sale or rental of a dwelling, in violation of 42 U.S.C. § 3604(f)(2) and implementing regulations; and

   c. Coercing, intimidating, threatening, and interfering with Plaintiff because it asserted its rights to provide assisted living services to seniors with disabilities on Gibson Island, and assisted prospective residents to enforce their own rights to do so, in violation of 42 U.S.C. § 3617.

43. The past and continuing acts and conduct of GIC, described above, were and are intentional and have been carried out with malice and/or reckless indifference to the federally protected rights of Group Home and its residents.

44. Defendant has intentionally and knowingly engaged in the practices described above, with the intent of denying rights under the Fair Housing Act.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court grant the following relief:

(a) Accept jurisdiction over its claims herein;

(b) Declare that the actions of Defendant, described above, constitute discrimination on the basis of disability in violation of the Fair Housing Act, 42 U.S.C. § 3601, *et seq.*;

(c) Enter a temporary and permanent injunction prohibiting Defendant from engaging in the illegal discriminatory conduct described herein and requiring Defendant to take all steps necessary to remedy the effects of such conduct including, but not limited to, permitting the renovations authorized by Plaintiff's building permit to take place and allowing prospective residents, their family members, guests, and staff of Plaintiff to access Gibson Island in the same manner as all other residents and authorized guests;

(d) Award Plaintiff compensatory damages, in an amount to be determined at trial, to fully compensate it for injuries including, but not limited to, monetary loss, the deprivation of statutory and constitutional rights, and other damages it has suffered as a result of Defendant's actions described above;

(e) Award Plaintiff punitive damages in an amount to be determined at trial that would punish Defendant for its intentional, malicious, willful, callous, wanton, and reckless disregard for the rights of Plaintiff and the residents it will serve, and would effectively deter Defendant from engaging in similar conduct in the future;

(f) Award Plaintiff its reasonable attorneys' fees and costs, pursuant to 42 U.S.C. §3613(c)(2); and

(g) Award such other relief as the Court deems appropriate and just.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated this 3rd day of April, 2020.

                              Respectfully submitted,

                                 /s/
                              Andrew D. Levy, Fed. Bar No. 00861
                              Jean M. Zachariasiewicz, Fed. Bar No. 19734
                              **BROWN, GOLDSTEIN & LEVY, LLP**
                              120 East Baltimore Street, Suite 1700
                              Baltimore, MD 21202
                              Tel: 410-962-1030
                              Fax: 410-385-0869
                              adl@browngold.com
                              jmz@browngold.com

                              Michael Allen*
                              **RELMAN COLFAX, PLLC**
                              1225 19th Street, N.W., Suite 600
                              Washington, D.C. 20036
                              Tel: 202-728-1888
                              Fax: 202-728-0848
                              mallen@relmanlaw.com

                              *Counsel for Plaintiffs*

*application for admission *pro hac vice* to be submitted.