# EXHIBIT 1

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

GROUP HOME ON GIBSON ISLAND, LLC, et al.,
Plaintiffs,

v. CASE NUMBER: 1:20-cv-00891-LKG

GIBSON ISLAND CORPORATION,
Defendant.

TRANSCRIPT OF PROCEEDINGS - TELEPHONIC MOTIONS HEARING
BEFORE THE HONORABLE LYDIA K. GRIGGSBY
UNITED STATES DISTRICT JUDGE
February 25, 2026

A P P E A R A N C E S

ON BEHALF OF THE PLAINTIFFS:

BY: STEVEN M. KLEPPER, ESQUIRE
GEOFFREY H. GENTH, ESQUIRE
JUSTIN A. REDD, ESQUIRE
KRAMON & GRAHAM, P.A.
750 E. Pratt Street, Suite 1100
Baltimore, Maryland 21202

ON BEHALF OF THE DEFENDANT:

BY: STACIE E. TOBIN, ESQUIRE
VENABLE, LLP
750 E. Pratt Street, Suite 900
Baltimore, Maryland 21202

BY: KATHERINE W. MORRONE, ESQUIRE
VENABLE, LLP
600 Massachusetts Avenue, NW
Washington, DC 20001

BY: CRAIG D. ROSWELL, ESQUIRE
NILES BARTON and WILMER, LLP
111 S. Calvert Street, Suite 1400
Baltimore, Maryland 21202

***Proceedings Recorded by FTR GOLD***
Transcript Produced by Computer-Aided Transcription

2

P R O C E E D I N G S
(10:35 a.m.)

THE COURTROOM DEPUTY: The matter now pending before this Court is civil action number LKG-20-0891, Group Home on Gibson Island, LLC v. Gibson Island Corporation. We are here today for the purpose of a status conference. Counsel, please identify yourselves for the record.

MR. KLEPPER: This is Steven Klepper along with Geoffrey Genth and Justin Redd for the plaintiffs.

MS. TOBIN: Good morning, Your Honor. This is Stacie Tobin from Venable. With me is my colleague, Katherine Morrone, as well as Mr. Roswell, Craig Roswell, all counsel for defendants.

THE COURT: Good morning, Counsel.

Do we have anyone else?

MR. KLEPPER: That's it, Your Honor.

THE COURT: All right, very good. Well, Counsel, thank you so much for taking time to join the Court this morning to talk about this civil matter. We visited back a few months ago upon remand of the case to talk about our next steps, including setting the case for trial. And one of the issues that arose at that time was a request to reopen discovery. That request has now been fully briefed in the form of a motion and the Court has carefully reviewed it and hopes to resolve the motion today so that we know what our schedule looks like going forward to prepare for trial.

3

I'm going to take just a brief moment to lay out on the record some of the relevant procedural history, and then I hope we can move into a productive discussion about the motion and resolve the motion while we're on the phone today and then revisit if we need to for scheduling matters in terms of how the case will go forward.

This case involves claims by the plaintiff that it has been discriminated against in connection with an assisted living group home facility for disabled senior citizens. The allegations involve disability discrimination and retaliation related to the denial of a request to waive certain restrictive covenants regarding single-family homes located on Gibson Island.

Back on October 23rd of last year the Court issued an amended pretrial scheduling order which among other things set the case for trial beginning on November 3rd of 2026. On October 24th of last year the defendant filed a motion to reopen discovery and this occurred after the parties and the Court had some discussion about the motion beforehand. On November 10th the plaintiffs filed a response in opposition thereto and on November 20th the defendant filed a reply brief.

The Court has had a chance to carefully review those filings and to understand both the nature and scope of the discovery sought and the reasons for that discovery.

4

I just thought a few initial observations might also be helpful. Obviously when the Court sets a schedule in any matter that is in close consultation with the parties and any effort or request to modify that schedule typically requires good cause. This is the case where of course the case went through discovery several years ago. We had post discovery motions for summary judgment practice. The Court ruled on those motions. Then there was an appeal and the Fourth Circuit ruled on the issues that were in the summary judgment motion and the case has now come back to the Court.

So my first observation is we are many years past the initial deadline for discovery in this case. The parties have consulted with the Court about setting the case for trial, but the primary focus for the trial is again on those issues that are before the Court when the case was initially filed and that the Court of Appeals has indicated are appropriate for the jury as opposed to resolution by summary judgment.

And so good cause here is significant because it's not just a matter of modifying a scheduling order, we're really going back and reopening discovery many years after the case moved past that phase and after there has already been quite a bit of litigation in connection with the dispute.

Secondly, we do have trial scheduled in November and while that is not immediately upon us, there is other

important work for the parties and the Court to do to get ready for trial. And one thing that will inform the Court's ruling on the motion to reopen discovery is whether and to what extent the areas of discovery fit into the actual issues for the jury to resolve at trial that relate to evidentiary issues that we need to address in advance of trial.

And so again, the Court's goal at this stage pursuant to Rule 1 is to move the case forward as expeditiously as possible to resolve the claims in the case. And the Court appreciates that there is some overlap perhaps in some more recent developments in the claims in the case; but nonetheless the Court's focus primarily is the claims and events that occurred back in 2020 and 2021 and so that also will guide the Court's decision when reopening discovery.

The last thing I'll share is I think the Fourth Circuit also made this observation as well, this has been a long-standing litigation and a long-standing dispute between the parties. The litigation may not be successful in resolving all of the areas in which the parties dispute, but I do believe it's important for the Court and the jury that will hear this case to take their time and take their steps towards resolving the claims in the complaint. And the Court does have a little bit of concern after having read the papers carefully about us really moving into areas that go beyond the scope of the claims that were filed in the case and what while



perhaps relevant in a broader sense, really were bringing in a lot of issues that were not before the Court when the case was initially filed and not before the Court when the Court addressed issues on summary judgment.

So I just share those observations up front. I want to give both sides a full opportunity to be heard on the motion and then the Court will be prepared to rule on the motion.

I would lastly like us to revisit the scheduling order that is in place because that set certain deadlines for motions in limine practice and other steps as we prepare for trial to the extent that that schedule might be impacted by the Court's ruling.

With that, before any preliminary issues I do want to give the defendant a chance to be heard further if they wish on the motion to reopen discovery. I'll then from the plaintiffs and then we'll walk through the Court's thinking in that.

Counsel for the defendant.

MS. TOBIN: Thank you, Your Honor. This is Stacie Tobin. I appreciate your overview of what the issues are.

From the defendant's point of view while I appreciate the litigation has been pending for some number of years, the reality is that the conflicts that have made the relationship between the parties strained have continued well past the end of the original end of discovery in this case. And those



ongoing interactions between the parties and from my point of view the continuing accusations that Mr. Lucy has made about others on the island and the corporation have continued and will continue to impact the claims in this case.

I say that because as you know, one of the showings that the Court will have to decide is whether some of the disputed terms within the competing accommodations are reasonable. And it will become difficult for the jury to assess that reasonableness without some of the limited additional discovery that we have requested.

I'll begin with the behavior and accusations that reflect Mr. Lucy's unwillingness to abide by governing authorities and rules on the island. As we mentioned in our papers, there are amended covenants that govern all persons on the island. And he has repeatedly asserted since the close of discovery that he is not bound by those, that they were induced by fraud and he will not comply with them. And that position alone reflects exactly the reasonableness of the accommodation that the corporation approved and it reflects the burden that will continue to impact this community as long as Mr. Lucy is involved in this project. Because he has --

THE COURT: Counsel, could I ask a question about that? I think it's helpful.

MS. TOBIN: Yes.

THE COURT: So again -- and you can help me. I'm



going back to the case that was filed and the claims. And of course there are a number of disputes about whether there was an accommodation here and whether the requirements that the community were seeking to impose were reasonable or appropriate, but I guess -- and I appreciate Mr. Lucy's response and operation of the property certainly has some relevance to that.

But my question is with the jury looking at it is going to be what was going on back in 2021 and 2020 with those issues and I'm not clear as to the relevance or need for conduct that Mr. Lucy has engaged in in more recent years in terms of the jury being able to figure that out. That's what I don't understand.

I understand your point, but the litigation obviously was not about stuff that's happened in the last few years when it was filed. It really was about the circumstance back in 2020 and 2021. His conduct at that time would be relevant, his willingness to cooperate or follow the restrictions would be relevant. I'm not sure how that plays into what's going on, you know, last year with regard to Mr. Lucy.

MS. TOBIN: I appreciate that. The corporation made its determination at the time that Mr. Lucy was an ongoing and continued risk to impose substantial burden. And his behavior in the last four years has borne out that judgment. And to ask the jury to be limited to only that information that the

corporation had at that time deprives the corporation of the ability to say this is exactly what we were concerned about then and this is exactly what the future of this island will be and this community will be if Mr. Lucy is not constrained by some of the reasonable protections that we sought to put in place to protect everyone in the community.

Mr. Lucy should not be permitted to stop time, then engage in behavior that is exactly the kinds of behavior that we said he would engage in and be protected from the jury's hearing about that behavior. It shows exactly the reasonableness of the corporation's concerns and the reasonableness of the measures that the corporation sought to put in place. And that's really why it would be admissible.

THE COURT: May I ask another follow-up question on your point? And I take your point and I guess the Court's broader questions for both parties based on this issue and perhaps on others, this sounds to the Court a lot more like an issue about the scope of evidence that will come into the jury that relate to the issues, what's relevant. Sounds like a motion in limine, that type of an issue. And so we're approaching it in the context of a request to reopen discovery, but it seems to the Court the real question is A) what are the issues for the jury to resolve and what is the scope and relevance of the evidence that the parties can rely upon to present to the jury to resolve those issues.



I haven't heard yet from the plaintiff, but I guess from the Court's point of view and I'm not deciding it, just talking out loud, again, the issue for the jury has to do with the actions that were taken by the corporation and the {indiscernible} back in 2020 and 2021. And I take your point that maybe other conduct maybe in the defense's point of view show you were right in making those decisions and you made the right call, but I don't know if that's even something that the jury pool would consider, but also I guess in this posture I'm not sure that's an issue about reopening discovery; that's an issue about a motion in limine and what is the appropriate evidence to come before the jury in terms of resolving the issues at trial.

That also gives me some pause addressing this issue kind of in a vacuum because I think the first question were the issues for trial and my reading of the Fourth Circuit's opinion is pretty clear that they think the issues for trial relate to what happened in 2021 and 2022. That's really what the Court was focusing on in the summary judgment motion. And I guess I'm rambling a bit, but I guess my point is one, this sounds like a motion in limine issue; and number two, at least based on the Court's general understanding of the evidence and what I'm hearing we're talking about conduct that occurred four years after the time period at issue in the complaint about behavior that's four years after that and whether that,



I guess, further supports the decision.

I don't know if that's really what the jury is supposed to consider, but I'm happy to hear more from you on that.

MS. TOBIN: Thank you. Let me begin with the Fourth Circuit point. I don't believe that the Fourth Circuit indicated in any assent that this case on remand is limited to the evidence that existed at the time of summary judgment. They simply didn't say that. And, of course, the only record they had in front of them was evidence that existed at the time of summary judgment. But nothing in the opinion in my view forecloses the parties from discussing things that have occurred since. So that's my view of the Fourth Circuit point.

With respect to the motion in limine, I understand there may be a motion in limine down the road, but we need to address first the right to discover the facts around those positions that Mr. Lussi has taken since the close of discovery, the behaviors in which he has engaged.

So going back to his refusal to abide by the amended covenants and his outright rejection of them, that has not been the subject of any discovery yet. Do I have his emails and documents staking out his position? Yes, I do. But, of course, I think I'm entitled to conduct an examination of him in deposition so that I can explore the factual basis that he has about {indiscernible} I shouldn't be limited to one or



more emails that he sent.

So in my view that is an ordinary discovery mechanism. We're not asking for anything that's particularly burdensome; simply the opportunity to conduct a deposition of him to explore those issues that have arisen since the close of discovery. Again, because in our view the Fourth Circuit hasn't done anything to limit that.

And I also am not aware of any law that says that the trial court's consideration of an accommodation request is limited to facts that existed at the time the accommodation was offered or denied. I don't see anything to indicate that the record is so constrained.

THE COURT: All right. What's your next issue in terms of discovery? I think Captain Andrew Parker is also planning on being deposed?

MS. TOBIN: Well, that's right. And it's not clear to me whether he's capable of being deposed, but it is Mr. Lussi who has asserted that Captain Parker is one occupant of Banbury. They haven't identified who else is living there. They haven't identified the circumstances in which Captain Parker is living there. They have identified him as a disabled owner/investor/occupant. All of that then becomes relevant to the matters at issue in this case.

As Your Honor knows, defendant's primary concern has been Mr. Lussi as an owner/operator of this would-be group home.

And if Captain Parker now is an owner or investor in one of the plaintiffs and has any ability to control how the group home is to be operated, has any ability to control the positions taken in litigation or even is just occupying the home, we believe that we ought to be entitled to take his deposition and to depose Mr. Lussi on those facts.

THE COURT: What specific issues is Captain Parker relevant to? I understand who he is, but can you speak more directly to what issues for trial Captain Parker speaks to?

MS. TOBIN: Yes. So if Captain Parker is living in the home for Mr. Lussi's or plaintiffs' commercial or business purpose, then his occupancy there violates the covenants that govern the island. And as Judge Bennett ordered early in this case, the home was not to be used as a group home unless there was an accommodation. That hasn't happened. If Mr. Lussi is actually permitting Captain Parker to live there for a business purpose, then Captain Parker's residency is in violation of Judge Bennett's order and in violation of the covenants. And that becomes relevant, again, to the burden issues.

Mr. Lussi takes it upon himself to be the full arbiter of what is right and what is wrong and he disregards authorities that he doesn't agree with. And so we are asking to depose Captain Parker and to depose Mr. Lussi around the facts of Captain Parker's occupancy so that we can understand whether



there has been a violation of the covenants or a violation of Judge Bennett's order.

THE COURT: Okay. And the only way that the defense believes it can get the information it needs to establish this is to depose these two individuals? We seem to have a lot of information about who we think they are and why they potentially are in violation. I guess I'm just trying to understand why the discovery is necessary.

MS. TOBIN: Well, I asked plaintiff's counsel to provide me with the information and they refused and said my request was not procedurally proper. And so I attempted to get it informally. They wouldn't provide it to me and so I am asking to conduct the depositions. And I should be able to conduct the depositions even if they provide it to me informally because I should be allowed to get Mr. Lussi under oath on the record about what the facts are. And the same as to Captain Parker. If Captain Parker is capable of being an investor in this project, then I assume he is capable to sitting for a listed deposition.

THE COURT: Okay. I think those are the two individuals that the defense wishes to depose. The Court also understands that the defense is seeking to designate several experts, which again, would happen well beyond the deadline for designating experts. The Court understanding and please correct me if I'm wrong, is the defense is looking to



designate a psychiatric expert, I believe {indiscernible} Lussi, a septic expert and a damages expert I believe in response to the plaintiffs' damages expert; is that accurate?

MS. TOBIN: Yes, that's right. The damages in response really to their amended answer to interrogatory offering a somewhat different damages theory. But those are the three disciplines in which we would ask to designate an expert.

THE COURT: Okay. Can you talk a little bit about why these experts will be needed and also obviously broadly address the fact that it's coming way beyond the time for designating experts.

MS. TOBIN: I'm happy to do that. Let me begin with the psychiatric expert.

So in the appeal of this case, in the briefing and the argument in front of the Fourth Circuit, plaintiffs made an issue of Mr. Lussi's supposed ADHD diagnosis and condition and asserted that at least his written behavior was the product of a disability and that the defendants were in effect discriminating against him because of his disability.

Now there had been only very incidental mention of Mr. Lussi in his deposition. He suffered from processing issues. And it was only on appeal that the plaintiffs sought to connect those supposed processing issues with an explanation for his behavior. And so that may explain then that they



intend at a trial of this matter to use this diagnosis to explain the difficulty that Mr. Lussi has caused and the burdens that he has imposed on the corporation. We have no factual evidence of a diagnosis other than Mr. Lussi's self-serving and frankly, very limited statement that he suffers from processing issues. It was not something that was argued or even disclosed in written discovery responses. And as I said, it was never connected as an excuse or explanation for his behavior. And so because plaintiffs first made that connection on appeal, we believe we should be entitled to explore that diagnosis and have an expert testify as to whether it can or cannot explain his behavior in this case, both his written behavior, his oral behavior, his conflict, his confrontation with others on the island, all of the things that combine to impose significant administrative and financial burden on the corporation.

THE COURT: Counsel, if I could ask you a question about that; that's helpful. And it's kind of along the same lines where the Court was asking before -- and I appreciate the retaliation claims in the case I think it's relevant to that. But the specific things about Mr. Lussi's diagnosis as you noted something that apparently was argued on appeal, it was not presented in connection with the case in front of me. So I guess, again, I'm happy to confer about why there is an issue about what are the actual issues in the case and the

scope of the evidence that's relevant. And it sounds to me like another motion in limine where perhaps this argument is not something that should be coming in at all and there would be no need for the defense to do discovery on it. It wasn't one of the grounds raised in the case in front of this court. And I guess, again, I'm raising the same point. And I hear your point {indiscernible}. What concerns the Court about this case, the case is complicated enough. It covers a long period of time in and of itself and now we seem to be trying to get into things that happened on appeal, things that happened three, four years after the core issues in the case. I'm not suggesting that there isn't some relevance there, but it gets to turn into a case about something that's very different than the case that was brought and certainly very different than the case that this court looked at on summary judgment. And so I have some concerns about that. I have some concerns about it turning into a mini-trial about Mr. Lussi's I guess behavior and mental health issues. Although I appreciate they are relevant, but it seems like we're turning it into a case about that which is not what the case was about, the one that was brought by the plaintiffs.

So I guess again on this issue, why isn't this another motion in limine issue that the Court perhaps ruled that type of argument is not appropriate?

MS. TOBIN: I think it will be a motion in limine,



Your Honor; but again, before we get there I need the opportunity to explore whether he has this diagnosis and whether the diagnosis explains his behavior.

Now look, even if I have that discovery, I am going to be coming to you and making a motion in limine on this. But right now I can't rely on you to give me that ruling. And I don't mean that to sound critical at all, but I won't be doing my job if I don't evaluate this first and I just assume that it's going to be excluded later. We obviously haven't briefed that issue for you. I wouldn't expect you to know what the outcome of that motion would be right now. And so I am concerned that somewhere down the line, if I haven't been able to explore this in discovery, then we have to brief it on a motion in limine and if for whatever reason {audio gap} persuade you that his diagnosis is admissible, I have no ability to respond to it.

THE COURT: Understood.

MS. TOBIN: And so I'm seeking a limited -- I know it's unusual, but it is a limited opportunity to evaluate an alleged medical diagnosis that they've introduced as relevant only after discovery in the case closed.

THE COURT: Okay. Let's talk about your septic expert.

MS. TOBIN: Yes. So on the subject, as you know, I think the parties have not given a great deal of attention to



that particular issue which is why you asked us to provide supplemental briefing on the septic issue, which we did. And I'll confess that for me as a lawyer it was challenging to brief the issue without the benefit of experts on the issue because it is not something that's particularly prone to common or layperson understanding. And so it seems to me that the jury benefits from an expert discussion of septic issues.

As we said in our brief, I have no concern or objection to plaintiff designating their own septic expert, but I think it becomes difficult for a layperson to understand the risk that this particular property has because of the nonconventional septic system that it relies on and because of the expanded occupancy that Mr. Lussi is relying on in order to operate this group home. And so having the benefit of a septic expert I think would help the Court and the jury and the parties to understand these issues better.

THE COURT: Okay, thank you very much. Do you want to talk about the damages expert?

MS. TOBIN: Yes. The damages expert is really because plaintiffs amended their discovery response in their answer to interrogatory to alter their damages theory. And I think we noted in our brief some of the apparent complexity of their changing position on damages. And now that the case is so much older, I expect that the methodology or the change -- they will change again because of the passage of time changes



in the market and other factors that will impact their damages position.

So originally they were relying on a damages assessment or model that was completed on February 28, 2020, an appraisal report. And I can't speculate, but I can only imagine that that is no longer an applicable or governing appraisal. And having experts on both sides be able to discuss whatever they're changing, a lost profit analysis will be helpful, again, to the jury and the Court and the parties.

THE COURT: And just a factual clarification so I understand, the defendant currently does not have a damages expert designated in the case? You don't have one right now?

MS. TOBIN: That is correct.

THE COURT: And does the plaintiff have one right now?

MS. TOBIN: Yes; at least they did. I assume they still do. I shouldn't speak for them.

THE COURT: I'll hear from plaintiffs in a moment. So basically what I'm hearing is that at this point you want your expert, you want to have an expert to respond to whatever the plaintiff's expert is saying and perhaps both sides might need an update.

MS. TOBIN: That's right.

THE COURT: Okay, all right. Thank you.

Are there any other experts besides these three?

MS. TOBIN: No, Your Honor.

THE COURT: Okay. Anything else you want to say to the Court about the motion before I turn to the plaintiffs?

MS. TOBIN: Not at this time, Your Honor. Thank you.

THE COURT: Thank you. Very helpful discussion. I appreciate you indulging my questions as I try to understand the defendant's position.

Let's hear from counsel for the plaintiffs. I know the defendant opposes this motion. The plaintiff has raised concern about the timing of the motion, lack of good cause, potential prejudice to the plaintiff and I'd like to hear more fully from the plaintiff its views in light of the discussion we've been having to date. Counsel for the plaintiff.

MR. KLEPPER: Thank you, Your Honor. This is Steve Klepper for the plaintiffs.

The thing we want to keep getting back to, Your Honor, is that they have -- they have an $800,000 budget between now and the end of August for legal work then and they keep telling the Court that whatever they're going to do is modest. And given what we have heard, this is all going to keep turning into well, this is something new we learned, this is something new we learned. They're going to keep coming back to the {indiscernible}.

And Your Honor hit the nail on the head that anything



that happened in 2025 and 2026, best case is either irrelevant or tangential. And our primary concern is the jury.

Now what they're trying to do, Your Honor, is to come up with post hoc justifications for what they did in 2020 and 2021. They say that there's no guidance from the Fourth Circuit. I mean, we've quoted from the Fourth Circuit. The Fourth Circuit did not accept either side's framing of issues fully. They very clearly said these are the issues for the jury and it all focused on Gibson Island's state of mind when it denied this accommodation and in the lead-up period when we're talking about retaliation.

Anything that they may learn after the fact is simply they have said aha, we were right all along. That doesn't assess, Your Honor, what their mindset was in 2020 and 2021. Discrimination and the related retaliation is about their mindset. And what they keep saying over and over again, Your Honor, is they need discovery to know how Mr. Lussi's behavior affected them. That is multiple layers removed from the actual issue before them. The fact that they may find somebody to come in after the fact, whether it's trying to use Captain -- across the board anything about the condition, Captain Parker, the various experts all backing them up after the fact whatever evidence they are seeking, that doesn't affect their mindset at the time they made the relevant decisions. If there were anything tangential that they



haven't -- what we don't want, Your Honor, is Rule 403 terms a series of many trials on collateral matters.

And I think Your Honor hit the nail on the head by saying aren't these issues for motions in limine. Yes, these are issues for motions in limine. The defendant knows precisely what impact anything that Mr. Lussi had on their behavior. They have said we're going to proffer things that happened afterwards. These are unreasonable things he did afterwards that we are hoping to link back I presume under Rule 404(b) which has a built in Rule 403 test. They're going to try to back load that.

Now we are going to oppose that. But they don't need discovery, Your Honor, to figure out what Craig Lussi did that may have objectively manifest matters for their behavior. They keep talking about his unwillingness to abide by conditions that applied to anyone. Again, what does this have to do with the jury? How is the jury going to be instructed? This is we have said a two-week trial; they said three-week trial. Whatever is we're talking about here, they will turn this into an incredible number of mini-trials on collateral matters.

And I will further say, Your Honor, I mean, if they were to get into that, we asked plenty of issues on our end that we think bear out that they have continued discriminatory intent. We would in fact say that their request to have a psychiatrist



do an arm-chair diagnosis of Mr. Lussi {indiscernible} would be discriminatory under the ADA. But that's not what we're getting into, Your Honor. What we're getting into here is what was their state of mind? Because are these conditions as they were proposed in 2021 the counter conditions that the Fourth Circuit held was a denial, were those reasonable. Because if they were not, were those motivated by Mr. Lussi being impossible or was it motivated at least in part by discriminatory bias. I say the but for causation under federal law, but it only has to be a motivating factor under the Maryland cases.

They talk about -- the ADHD issue I really want to discuss. Now Ms. Tobin was not counsel at the time these depositions were taken. Mr. Roswell who is on the line was. Mr. Roswell asked Mr. Lussi about his time at UVA. And Mr. Lussi squarely said during my time at UVA I had an accommodation to take my exam orally. And said I was disfigured. Mr. Roswell's follow up was not about well, why did you get an accommodation to take exam orally. He did ask the follow-up question was tell me more about your {indiscernible}. And they did have a chance.

And then later on in the deposition that same deposition Mr. Lussi said when they were trying to bring up a collateral issue, something about his dealings with the school, he said both my son and I have severe ADHD. He said that at the time.

This is all in front of them.

And then when defendant filed the first motion for summary judgment we filed the summary judgment opposition. And in that summary judgment opposition, Mr. Lussi said squarely in his affidavit that I have ADHD and I am a poor editor as a result. He said this.

Now what happens in summary judgment, Your Honor --

THE COURT: Counsel, counsel, counsel, if I could just interrupt I want to ask you a question and then I'll let you continue. I want to go back to the point you were raising and one the Court raised about the matters that the defense is seeking to get into in terms of discovery are arising many years after the key facts in this case, after the 2020, 2021 period. And I'm looking at the complaint or amended complaint as we're talking and one of the things that I wanted to ask you about is that in the two counts where you lay out the violations of Maryland law and the FHA, there are also allegations about past and continuing acts by the defendant resulting in the violation. And of course a long history already in the complaint of things that went on over several years related to the group home and the covenants so there's a lot in the past. And continuing acts seems to draw in conduct going forward. And to go back to what your opposing counsel was pointing out, she seems some relevance and importance in conduct that's occurred going forward to responding to the



charges.

How do you respond in light of your argument that this is really about what happened in 2020 and 2021?

MR. KLEPPER: I will say exactly what I said to Your Honor earlier. The Fourth Circuit did not accept either side's framing of the issues for trial and the Fourth Circuit gave directions to both sides. Now we can get into {indiscernible}, Your Honor, for motions in limine about how tightly anything goes, like, ties back to what happened before.

At the same time, Your Honor, none of that would affect objectively what Gibson Island Corporation's state of mind was at the time of those actions. And if there were anything that they say well, we need discovery on that, they're saying we need a chance to talk to Craig Lussi about it. Well, they deposed Craig Lussi for 14 hours, Your Honor. They had plenty going on there and many things, the things that we were discussing in the complaint that had been disclosed in discovery, they had a chance to depose Mr. Lussi about it. So I believe the final deposition, the one that I was talking about earlier, that I believe occurred two days before the discovery deadline. And so there was a chance for everyone to discuss that. We deposed them on those post 2021 issues; they deposed Mr. Lussi on them.

What they are now raising, Your Honor, are -- we're now



talking after the Fourth Circuit's opinion, they are talking about issues that are tangential in the extreme to what was raised in the complaint and what their state of mind was during the relevant period of time.

In particular I would like to discuss this issue as to Captain Parker. Now there is a central point we raised in our opposition. Captain Parker is Jeanette Lussi's cousin. We produced something rather unusual, it turns out there is an EP Court of Appeals opinion that allows the Court to even take judicial notice of this family relationship. And as we said at that moment, it has always been understood -- and this included before Judge Bennett -- that of course LLCs that own properties are family ventures. The LLC that owns this property, Craig Lussi is not the only member. His wife is a member; his children are members. And yes, and now one of the persons who holds some of this interest is Captain Parker, an 85-year-old Vietnam veteran. And their response to that, Your Honor, was well, we didn't know he was a cousin. What they have not said, Your Honor, is to dispute in any way, shape, or form that, of course, there is a difference in kind between a family member and a member of the general public to whom there might be an {indiscernible}. And we have firmly committed, Your Honor, in writing, that Mr. Lussi -- I'm sorry, that the plaintiffs are not going to do any arrangements with anyone who is not a family member. And included I believe in that



there is Captain Parker's longtime fiance. We're not going outside the family, the precise types of family members, that extended families own LLCs and trusts that own these properties. Not many of these properties are actually owned by individuals.

THE COURT: Counsel, counsel, can you just restate again, explain the relationship between Captain Parker? I didn't quite follow that part.

MR. KLEPPER: Okay. Captain Parker -- so Captain Parker's first cousin is -- I'm sorry. Captain Parker is first cousins with Jeanette Lussi's father. And so --

THE COURT: Father?

MR. KLEPPER: They are -- that is a, you know, I am -- I know all of my first cousins' children, if they have them; they know mine. And that is very much within the realm of family members who own LLCs on Gibson Island. And when I say that the response is well, {indiscernible}.

THE COURT: So your view is that Captain Parker is a member of the extended family?

MR. KLEPPER: Yes.

THE COURT: Okay.

MR. KLEPPER: Thank you.

THE COURT: So the Court does generally understand the plaintiffs' view to be that the depositions of Mr. Lussi and Captain Parker are not necessary at this point and not

appropriate?

MR. KLEPPER: Correct. And we know that they are monitoring Mr. Lussi. We know from this incident regarding a flag and a spotlight being shined on this by concerned citizens. And they also know from the gate, the gatehouse when Captain Parker comes and goes. They have an incredible amount of information if that's something they wanted to get into. But again, how does this -- so what they want to do is they want to get into a fine legal debate, like get information, get an assigned point of legal debate over they think that this violated Judge Bennett's order. Well, if there are fine points to a legal debate, that is not something that a jury would be instructed on. That's not something a jury could consider in that. If there are good faith arguments on both sides, that's not something that -- I think it's very clearly in our favor. Let's say they have a good faith argument on the other side. Okay, how does that affect any of the issues for trial if there is a good faith disagreement over legal rights and obligations in the year 2025? There are all kinds of disagreements.

They keep saying that Mr. Lussi is challenging deeds and covenants. Yes, he has said that the amendments to the deeds and covenants are not valid. But nothing about that says like oh, he violated. The alleged violation, Your Honor, involves an issue with Captain Parker.



And so again, and they say well, Judge Bennett held this, Judge Bennett held that. Judge Bennett held that there would be no unilateral development in the Gibson Group Home while the good faith ADA process played out. And they insisted for years that it never ended because they never denied it. And the Fourth Circuit said yes, they did deny it under Black letter law.

Now we're not coming forward and saying okay, well as a result we're just going to start running ads and welcome the public willy-nilly. What we are saying is rather than getting into a debate over what Judge Bennett held, anything like that, we're going to keep confining this to this extended family member.

And as we have noted and they jumped up and down but don't have any contrary authority, Your Honor, what they are seeking to do is to say, is to get a judicial order. Because I told you, the jury can't resolve good faith, whether there's a good faith dispute over the matters. They're trying to get an order from this Court, I believe, that Mr. Lussi is in violation of Judge Bennett's order. Even if they were to do that, Your Honor, Fourth Circuit binding authority cited in our brief on the last page is that no, judicial findings of fact don't come before the jury because that puts the thumb on the scale. It is definitional Rule 403 violation. This is under the *Nipper v. Snipes* case that we cite at page 30 of our



memorandum which is backed up by the rule book of -- I'm sorry, it's hearsay. That is not subject to any exception.

THE COURT: Counsel, if I could just interrupt you again because I take your point and again, I'm going to come back to the same thing the Court said earlier. We're now talking about another potential evidentiary issue if the Court were to make certain rulings and findings. And I appreciate your point is well taken and that's part of the problem. We're addressing all these issues in the context of discovery about things that might come out. Things that the Court might do. Things that the parties might discover. And I think largely this case is beyond that phase in terms of where we are for trial, but I hear you.

I want to talk briefly with you about the experts that the defendants wish to designate. There are three: The psychiatric expert; a septic expert; and a damages expert. And the Court understands that the plaintiffs, you have a damages expert as well.

What are your thoughts about that?

MR. KLEPPER: We do. Okay, well I discussed the psychiatric expert, which is inappropriate. This is something that would happen -- happens in Rule 35 cases and we've got all the authority that not only is Mr. Lussi not considered a party because the U.S. Supreme Court rejected a rule amendment that would have allowed depositions of each of the parties,



but this is also -- it isn't just relevance when you talk about that it's either irrelevant or tangential, but it's not mere relevance. It has to be a core issue.

And this is something that we raised in response based on materials we disclosed in discovery and pointed out in our summary judgment affidavit that said he has ADHD and that's why he had oral exam accommodations since many years ago since he was a teenager.

This is tangential. They didn't jump up and down and say why didn't you raise this earlier. This case up on appeal. Their opposition brief, Your Honor, was essentially a 13,000 word ad hominem attack on Mr. Lussi and seeking to prove as a matter of law that his emails were so irrational, so unreasonable that the Fourth Circuit could take judicial notice that he's impossible to work with even though that had not been the foundation of this Court's ruling. They were seeking to advocate interpretations alone on alternative grounds. We've raised it in response and there we are. This is tangential.

The septic expert --

THE COURT: The psychiatric expert is not relevant. What about the septic one? Go ahead.

MR. KLEPPER: The septic expert. Yes, Your Honor asked for supplemental briefing, thought it needed to be {audio gap.} We designated -- we had the site inspector come

through. The county had come through. The county had inspected and said it meets all schematics. This is something we attached. We didn't have that earlier because they hadn't disclosed -- they hadn't copied us on this. They hadn't let us know that the county had even done that.

In this court after supplemental briefing they didn't say what they're saying now; oh, wow. This is really hard. We really should have an expert. They didn't ask for {audio gap} Your Honor. So the substantial issue, Your Honor, is that we didn't put the septic at issue; they did. Their condition included the septic condition. And what Ms. Tobin has expressly said is boy, it's really hard to justify this septic condition without an expert to come in and say this is reasonable and to contradict what plaintiffs' site inspector said. Okay. Well, yeah. That's exactly right, Your Honor. What they have said is whoops, we don't have anything to say that the condition we imposed in 2021 was reasonable. We had nothing objective at the time. It's hard.

Your Honor, this isn't an argument for further discovery; this is a party admission by the other side. And so bringing this in now would simply confuse the jury by making it seem like they can ret con, you know, retroactive continuity, they can put back in time and make this part of their decision-making process in 2021. Here is their decision-making process in 2021.



We deposed their corporate designee, their corporate designee. We said, did you ever have anyone inspect this? They said, yes; we got an expert. We never heard. What did the expert say? He agreed. This conforms with the county. All right, so the reason they did not designate an expert in 2021, Your Honor, is because they did consult one and they couldn't find an expert at the time to say that what they did was reasonable. And so now what they're trying to do is well, maybe we can find somebody else we couldn't find back in 2021; end of discovery in 2022. This is wholly inappropriate.

THE COURT: Does the plaintiffs have a septic expert? Does the plaintiffs have a septic expert?

MR. KLEPPER: {Audio gap.}

THE COURT: I'm sorry, Counsel; I just hear you.

MR. KLEPPER: Sorry, Your Honor. We don't have separately designated. What we have is a hybrid fact expert witness, the person who did the work.

THE COURT: Okay. And you're going to treat them as being an expert on septic matters?

MR. KLEPPER: Yes.

THE COURT: All right; go ahead.

MR. KLEPPER: And again, they did not designate anyone within the discovery deadlines to give them what they now say puts them in a real bind to say we don't have anyone who can say at the time our decision-making process included



an expert engineer who told us this is all correct. That yes, they had a good faith scientific basis and this is inappropriate.

THE COURT: Okay. Let's talk about the damages expert.

MR. KLEPPER: This is pure speculation on their part about what they think we're going to do within the deadline to supplement. We have a deadline to supplement our damages expert. They never designated a damages expert. They now are speculating it's going to be so different that their mindset will have changed, that it's going to be {indiscernible.} And again, here I think they are giving it away. And whatever it is that we say in the supplemental, we're going to say this is a huge startling change that had we known back in the day would have changed our thought process and we would have designated an expert.

Now we know, Your Honor, we know from their $800,000 budget that they have spared no expense in coming up with their defense. We have a damages expert. There is time for rebuttal experts; they didn't do it. We're the plaintiff, we did. There's the defense deadlines, there's rebuttal deadlines, there's all of that. And what we all know, Your Honor, is that it's a two-way sword when you're a defendant deposing a damages expert. Because a lot of the time when that comes in the damages expert starts making concessions



that well, of course that's reasonable and then they're locked in and they set a floor for the damages. They made a conscious decision back in the day that they were -- you know, we're fighting on liability. Damages: Minor issue. This case is about liability.

And this happens all the time, Your Honor. A party, you know, loses summary judgment or summary judgment is granted and that's on appeal they're like, oh no. We need {indiscernible}. Now that this has been framed in a way that we are facing exposure, you know, liability, we're not as confident as we were before, we were so darn confident about this, we need to mitigate {audio gap.}

THE COURT: Counsel, are you still there?

MR. KLEPPER: --the case they cited, the Eighth Circuit case we do, it's too late. It's too late for them to say we need a damages expert.

Now I will propose to you that yes, we are going to designate. I think we're going to supplement I should say, we're going to supplement in a way that shows whatever their concerns are are {indiscernible} that there has been no change in the methodology or anything like that. But let's say there is a change. Okay, well, bring it up with the Court then. This is not the time for them to make suppositions about what may, how things may unfold because what they have made clear through all of this -- and I just, this is all part of their

$800,000 litigation budget.

Before I finish, Your Honor, I do want to -- I know Your Honor probably doesn't want to address this yet, but I do want to put on the Court's agenda that we very much want to get a firm position from the defendant today on mediation because we have been unable to get a firm position from them. But for now --

THE COURT: The mediation {indiscernible} parties, not the Court; but I take your point.

I'd like to stick right now with the motion and thank you for your helpful discussion from the plaintiff.

I'd like to circle back briefly to counsel for the defendant on two points: The septic expert and the damages expert. Anything else you want to speak to on those two topics now that you've heard the plaintiffs' response?

MS. TOBIN: I do, Your Honor; thank you.

With respect to septic, plaintiffs attached to their summary judgment motion an affidavit from a gentleman named Mark Davis. And he is their person on septic, apparently. And he was a designated expert, but not on septic. He has an MBA and is affiliated with something called MBA Healthcare Transactions Group. And his expert opinion at least as it was disclosed to defendant had nothing to do with septic. It was about operation of a group home. And so what they did on summary judgment after discovery was closed was provide a



declaration from Mr. Davis that offered them an opinion on septic issues.

So to suggest that we somehow didn't do our work in order to properly address their septic expert just ignores the reality of the record and what they've done here. And so fair play here is that if they're going to use Mr. Davis or, frankly, anyone else to testify as an expert on septic issues, we ought to have the same opportunity. The issue --

MR. KLEPPER: Your Honor?

MS. TOBIN: Excuse me.

MR. KLEPPER: I do want to just make very clear --

THE COURT: Counsel, counsel, counsel, counsel, counsel. We'll have one person talk at a time.

MR. KLEPPER: I'm sorry. I apologize, Your Honor.

THE COURT: And counsel for defense has the floor. And then when she is finished, if the Court thinks it's appropriate we'll recognize other individuals. But I think I have a good understanding of the concern. I did want to hear the remainder of what counsel for the defense had to say about the two experts. That was helpful and then I will recognize you.

Go ahead, Ms. Tobin.

MR. KLEPPER: Okay; my apologies, Your Honor.

MS. TOBIN: That's the issue on septic at least with respect to the expert disclosure. It's consistent with the



positions they've taken on the ADHD issue which is because they attached a declaration to the summary judgment motion, then we had an opportunity to respond. And that, of course, is not correct. Their late game and even appellate activity to inject these issues is what has created the problem and put us in the position that we're in.

With respect to damages, the damages expert that the plaintiff disclosed was Mr. Lussi himself. And so I was not counsel at the time. I can only speculate about what the thinking was at the time about that designation. But since that time as I mentioned before, plaintiff has relied on an amended answer to interrogatory that changes, in my view, their approach to damages. And so we're asking for the opportunity to be able to address their approach via a damages expert.

And finally, Your Honor, I wanted to address something that Mr. Klepper said with respect to Captain Parker and his family member status. We did not have that information before, but it's not dispositive of the issues that I raised before with respect to whether Judge Bennett's order has been violated or whether occupancy of the home is violating the covenant.

And I'll refer Your Honor to an email from Mr. Lussi that we copied into our opening brief on this motion at page 3. And I'll read aloud to Your Honor why I think it matters.



In an email to the Gibson Island Corporation board, Mr. Lussi wrote: We demand the GIC HOA immediately stop enabling and facilitating the light trespass and discriminating against, burdening, and disturbing the disabled investors, owners, occupants -- all in plural -- of the home owned by GIC HOA Stockholder Group on Gibson Island of which -- and I'm skipping a bit here -- the 85-year-old disabled Captain Parker is an owner/investor. Additionally, other investors, owners, occupants of the home who also have disabilities are being light trespassed and discriminated against, burdened, and disturbed by the GIC HOA who is not enabling -- and it goes on from there.

So it is Mr. Lussi himself who has said to the board that there is more than one disabled owner, more than one disabled investor, more than one disabled occupant of the home. And so whether Captain Parker has some right to be there as a family member is not the issue. The issue is whether Mr. Lussi and the plaintiffs are using that home in a way that would violate the covenants and/or Judge Bennett's order. And it is because of that that we are asking for the opportunity to conduct some limited discovery to establish the facts around that.

Either Mr. Lussi misrepresented the facts --

THE COURT: Counsel, if I could just interrupt because we're over an hour and I'd like to try to resolve the motion. I think I have a good feel for the parties'

positions, in addition to the papers. So thank you; that's helpful as well.

I'm going to at this time share the Court's views on the motion and then I'm going to issue an order to that effect. And it's been a very helpful discussion. I very much appreciate the input from counsel. I have a much better feel for the issues and how they fit into the trial, so thank you very much.

As I indicated at the very beginning of our call, we are in the posture of this case being both post discovery, post-discovery motions practice and now post an appeal of the Court's resolution of a motion for summary judgment. And so the case is now on the track for trial on the issues raised in this case in the amended complaint. Those issues relate to an accommodation agreement that was ultimately not entered into by the parties dating back to 2021 and really even before that in terms of various acts that occurred, interactions that occurred, decisions that were made related to the Home on Gibson Island.

We are now in 2026 and clearly a lot has happened since April of 2021, but not all of that is the direct {indiscernible} to the issues raised in the complaint and the claim raised in the complaint and I would include in that list things that may have come up on appeal in terms of the parties' argument before the Fourth Circuit. They're not in



the record before this Court and they weren't part of the actual complaint.

So with that lens, the Court is looking at the request to open discovery as one that requires good cause and one that also requires some {indiscernible} discovery that is needed to resolve the issues for trial.

I'm going to start with the request for fact discovery. The defendants are seeking to conduct two depositions: First, to reopen the deposition of Mr. Lussi. The core issues related to his conduct and behavior over the last several years. The defense argues that it does relate to or confirms that would be {indiscernible} agreement the parties were unable to reach and also I think relates to some of Mr. Lussi's arguments about retaliation on the part of the corporation against him and members of his family.

The second area of fact discovery is a deposition of Captain Parker. The Court understands that this would be a new deposition and that Captain Parker is an individual residing at the home. He allegedly is also a member of the extended family of the Lussi's and the defense is seeking to get better information about who he is and his role at the property.

Just from my discovery of Mr. Lussi already, I don't really see a basis to reopen his deposition to explore his behavior in years well past the time frame for the dispute in



this case. The Court also understands his ADHD diagnosis is something that was known some time ago from when he was first deposed and I don't see any basis for reopening his deposition to further explore that for purposes of the issues at trial. It's not that they are wholly irrelevant; they don't speak directly to the central issue the jury is going to need to decide what was going on in 2020 and 2021, including Mr. Lussi's conduct at that time and how that informed the corporation's decisions regarding an accommodation. I don't really see how Mr. Parker really fits in at all regarding the issues that are currently before the jury in this trial. They may relate to potential violation of the Court's order, but I don't think that that's something that the jury needs to work out.

So I'm going to deny the defense's request to conduct fact discovery of further depositions of Mr. Lussi or Mr. Parker for those reasons. Good cause is not shown. I don't think that that information largely will be relevant to the issues for the jury at trial and it also comes very, very late in the litigation.

Turning to the expert discovery request, there are three experts that the defense wishes to designate: A psychiatric expert, a septic expert, and a damages expert. And counsel has explained the need for those experts in this case. Because and for the same reasons the Court is not inclined to



allow reopening of Mr. Lussi's deposition, I'm not going to allow the defense to designate a psychiatric expert. Again, this seems to be talking about conduct well beyond the time period at issue in the case and allegations about Mr. Lussi's conduct formerly approving the decisions of the corporation. I don't think that's really the issue in front of the jury so I'm not going to allow a psychiatric expert for those purposes.

The other two areas I think do really speak to the heart of this case and the Court struggled a bit with the septic issue as you know on summary judgment in terms of to better understand that. I do think that's an important issue in the case. The plaintiffs have indicated they have a hybrid issue that may speak to some of these issues. The defense wants to designate a septic witness for this purpose. I think that makes sense. I think it might be helpful to the jury. I think it will be helpful to the parties perhaps in streamlining the issues for trial. And so I would be inclined to consider allowing the defense to designate such an expert, as well as for the plaintiff to either supplement or designate an expert in that particular area.

Lastly on damages, I understand that the plaintiff did designate a damages expert. I think we all agree with the passage of time there may be some need to update that expert opinion on the issue of damages and the defense I think

anticipating that wants to have their own expert. Again, I don't think this is unreasonable. If and when we get to issues of damages it will be important to have fresh information so that the jury and the parties can make appropriate decisions about damages in the case. And so I'd be inclined to allow the defendant to designate a damages expert and also to allow the plaintiff to either update or supplement the expert reports today.

So what I'm inclined to do is to grant in part and deny in part the motion. I'm going to deny it with regard to the request for fact discovery. I'm going to deny it with regard to the request for a psychiatric expert witness, but I'm going to grant it with regard to the designation of a septic expert and a damages expert and allow both sides if they wish to designate such experts and/or in the case of the plaintiff, supplement the expert report currently provided by the expert to do so before we go to trial. I think that makes sense. I think it will be helpful to the jury and hopefully, again, may assist in streamlining the actual issues that we can deal with at trial.

So in light of that and looking at the schedule, once I hear if there any questions about the Court's order I would like us to revisit the schedule and see if we can come up with a schedule for designating a septic and damages expert and also for supplementing any expert reports that are already out



there with regard to those issues well in advance of trial to aid the parties in preparing for trial.

My first question is are there any questions from the parties about the Court's ruling? Any questions from counsel for the defendant about my ruling on your motion?

MS. TOBIN: I don't think so, Your Honor; thank you.

THE COURT: All right. Any question from the plaintiff about the Court's ruling on the motion to reopen discovery?

MR. KLEPPER: Not at this time, Your Honor; no.

THE COURT: All right, I'll put this in writing.

Are we prepared to talk about a time frame for designating the two experts and supplementing the disclosures in advance of trial, Counsel?

MS. TOBIN: I can do that, Your Honor. I suggest that the defendant make their expert disclosures by May 8th -- I'm sorry, I'm looking at my calendar. Give me just a second. How about if we do May 1st?

THE COURT: May 1, 2026?

MS. TOBIN: That's right.

THE COURT: That would be your septic and/or damages?

MS. TOBIN: Correct.

THE COURT: Okay. Does the plaintiff wish to also designate a septic and/or damages expert beyond what you've



already done so?

MR. KLEPPER: I think we should set a deadline, Your Honor, for us to do so and we can make that decision upon seeing theirs.

THE COURT: Upon -- I'm sorry? I didn't hear the end of what you said.

MR. KLEPPER: Upon seeing theirs. So we would like to set a deadline for us too.

THE COURT: All right, so can you propose a date? If we go by May 1 as the date for the defendants to designate their septic and/or damages experts, when can the plaintiffs designate their expert?

MR. KLEPPER: Six weeks from then would probably be good.

THE COURT: Propose a date.

MR. KLEPPER: They said May 1st, Your Honor?

THE COURT: Correct.

MR. KLEPPER: So that would be June 5th.

THE COURT: June the 5th.

MR. KLEPPER: I'm sorry, June 12th. June 12th.

THE COURT: I have June 5th as six weeks out; is that correct?

MR. KLEPPER: I'm sorry, I had gotten it wrong when I was counting. June 12th, Your Honor.

THE COURT: June 12th. Okay, all right. All right.



So then I want to walk through what we're discussing to make sure everyone is comfortable. So defense will designate their expert for septic or damages on May 1st. Plaintiffs will do their designations on June the 12th and then I assume the parties may want to give any supplements to their report sometime thereafter. What's your pleasure with that?

MS. TOBIN: Your Honor, speaking for defendant, it's a little bit odd for -- because of our posture that we would designate first and then the plaintiffs would respond. So I'd like a rebuttal opportunity because ordinarily it would be the plaintiff's burden to designate first and I'd respond. I understand why things might be different here, but if they're going to change their expert I'd like an opportunity to have a rebuttal.

THE COURT: Okay, what are you proposing for the timing of that? Again, as I understand it, there's already at least a damages expert that has been designated by the plaintiff so they have that person. They're debating whether they're going to do something else.

MS. TOBIN: Their damages expert is Mr. Lussi. So I don't know whether they're going to stick with that or they're going to do somebody else. And so that's why I'm worried. If they make a disclosure, it ought to be done really as a designation in chief as opposed to a response to ours.

THE COURT: All right. Well, based on the schedule

I have so far when do you want your rebuttal?

MS. TOBIN: If they are responding by June 12th?

THE COURT: June 12th.

MS. TOBIN: Then we'll need until July 3rd. That gives us three weeks.

THE COURT: All right, July 3rd. And then you also want a deadline for any supplements?

MS. TOBIN: Yeah, we should. Are we going to include a deposition for experts?

MR. KLEPPER: Your Honor?

THE COURT: Sorry, I need one person to talk at a time. Go ahead, Ms. Tobin, and then we'll hear from the plaintiffs.

MS. TOBIN: Are we going to set a deadline for the depositions of experts? Because that will impact the supplementing deadline.

THE COURT: We could do all that, Counsel. Honestly, I would hope that counsel could try to work together. I just want to have a broad schedule to make sure it works with our trial schedule. I think we have enough time to get all this done. But honestly, I wasn't planning on going through in detail all the dates. So I just mainly want to get a date for the designation of the experts. It sounds like both sides may want to take advantage of that opportunity to kind of get things rolling. I'm happy to put in these



other deadlines and then you all can work on more details. I'm happy if you want to bring an end to the schedule. I just note right now we currently are scheduled to start motions in limine practice on July the 8th. So the experts are getting past that at this point and trial is scheduled for November. So we have some time, but it sounds like you might want to get the expert stuff done before we get too deep in the motions in limine practice.

MS. TOBIN: Yes. I would suggest that we have a supplementation deadline of July 17th, if that's not too late; two weeks after the rebuttal.

THE COURT: That, again, means you're going to get your motions in limine--

MR. KLEPPER: Your Honor?

THE COURT: --practice before your expert papers are in. You need to exchange all of that. But it's up to you, but just to note that.

MS. TOBIN: It does create -- I don't want to get in the plaintiffs' way, but if we disclose our experts by May 1st, could they disclose theirs within four weeks instead of six? Six weeks is a long time for two witnesses and I just wonder if that would help the schedule.

MR. KLEPPER: Your Honor, if I may, sorry. I don't mean to talk out of turn.

THE COURT: Go ahead, Counsel. And I have about



five minutes. I have a jury out.

MR. KLEPPER: I think that the upshot of Your Honor very wisely raised July 8th as motions in limine deadline, that tells me for this expert supplementation to work, I think Gibson Island Corporation should be -- I think the deadline for the supplemental experts needs to be before May 1st to keep everything on trial -- I'm sorry, to keep everything on track.

THE COURT: This is what the Court is going to do because we've been going for more than an hour and I have other proceedings I have to get to. I'm going to issue an order allowing the parties to make a designation. I'm going to direct the parties to file a status report by next -- today is Wednesday, so by Monday, proposing a schedule for the designation of your expert, any rebuttal and supplements, keeping in mind the current schedule which you do have as the Court's amended pretrial scheduling order, ECF 130.

We have plenty of time between now and July 8th I think to get this work done. So perhaps a little more thought about a schedule that makes sense will be helpful. This is just February, or end of February. So perhaps it could be designated earlier; I don't know. But I'm going to ask the parties to look at their calendars and come up with a schedule to get the expert discovery completed before July 8th so that we can move forward with motions in limine practice. And I



think that that's something that you can do instead of trying to kind of {indiscernible} together now. And I appreciate you looking at your calendar.

So I'm going to issue an order now doing what I said: Granting in part and denying in part the motion. I'm going to allow the parties to designate experts in the area of septic and damages and I'm going to instruct the parties to provide a proposed schedule for those designations and any rebuttals and supplements. And once I get that from the parties I'll reissue the scheduling order adding those dates to the schedule.

Any questions about that from the defense?

MS. TOBIN: Thank you, Your Honor. No.

THE COURT: Any questions from the plaintiff?

MR. KLEPPER: Your Honor, I did just very briefly want to mention and again, I know the Court doesn't handle mediations, but what I wanted to bring to the Court's attention is that at their request we proposed mediators back in August and then at the December 5th shareholder meeting we -- Gibson Island's president publically committed that they would give various consideration to any settlement proposal we put in writing. So we put that in writing a few days later and we since then -- I just -- we have not gotten anything from them committing one way or the other on mediation. Usually a scheduling order has mediation deadlines. I think

that we should -- if they are open to mediation as they said, I think we should also get a mediation deadline on the scheduling order. I will report {audio gap} Judge Grimm is now available for private mediation. I think that I'd like for us to confer about whether there's agreement to a mediation deadline.

THE COURT: Thank you very much.

Counsel, anything from the defense?

MS. TOBIN: We'll confer with Counsel about it as part of the status report that we'll submit to the Court by Monday and if we reach agreement then we'll include a mediation deadline as part of that schedule. I need to discuss that, but happy to include it in or address it at least in the status report that we provide to you.

THE COURT: Very good.

Anything else that we need to address before we adjourn?

MR. KLEPPER: No; thank you, Your Honor.

MS. TOBIN: Not from the defendant; thank you.

THE COURT: Counsel, again, thank you very much for your time and patience today. It was a helpful discussion. We'll get a brief order out right now consistent with my ruling on the motion to reopen discovery and inviting the parties to file a joint status report about a schedule for designation of expert witnesses, as well as any updates with regards to mediation.



With that, I believe we can stand adjourned. Have a good day.

MS. TOBIN: And you too, Your Honor. Thank you.

MR. KLEPPER: Thank you, Your Honor.



CERTIFICATE OF OFFICIAL REPORTER

I, Nadine M. Bachmann, Registered Merit Reporter and Certified Realtime Reporter, do hereby certify that the foregoing is a correct transcript of the audio-recorded proceedings in the above-entitled matter, audio recorded via FTR Gold on February 2, 2026, and transcribed from the audio recording to the best of my ability and that said transcript has been compared with the audio recording.

Dated this 6th day of April, 2026.

-S-

NADINE M. BACHMANN RMR, CRR
FEDERAL OFFICIAL COURT REPORTER

## $

**$800,000** [3] - 21:18, 35:17, 37:1

## 1

**1** [3] - 5:8, 46:19, 47:10
**10:35** [1] - 2:2
**10th** [1] - 3:21
**1100** [1] - 1:14
**111** [1] - 1:23
**12th** [7] - 47:20, 47:24, 47:25, 48:4, 49:2, 49:3
**13,000** [1] - 32:11
**130** [1] - 51:17
**14** [1] - 26:16
**1400** [1] - 1:23
**17th** [1] - 50:10
**1:20-cv-00891-LKG** [1] - 1:5
**1st** [5] - 46:18, 47:16, 48:3, 50:20, 51:6

## 2

**2** [1] - 55:9
**20001** [1] - 1:21
**2020** [10] - 5:13, 8:9, 8:16, 10:5, 20:4, 22:4, 22:14, 25:13, 26:3, 43:7
**2021** [19] - 5:13, 8:9, 8:17, 10:5, 10:18, 22:5, 22:14, 24:5, 25:13, 26:3, 26:23, 33:17, 33:24, 33:25, 34:6, 34:9, 41:16, 41:21, 43:7
**2022** [2] - 10:18, 34:10
**2025** [2] - 22:1, 29:20
**2026** [7] - 1:9, 3:17, 22:1, 41:20, 46:19, 55:9, 55:13
**20th** [1] - 3:22
**21202** [3] - 1:15, 1:18, 1:23
**23rd** [1] - 3:15
**24th** [1] - 3:18
**25** [1] - 1:9
**28** [1] - 20:4

## 3

**3** [1] - 39:24
**30** [1] - 30:25
**35** [1] - 31:22
**3rd** [3] - 3:17, 49:4, 49:6

## 4

**403** [3] - 23:1, 23:10, 30:24
**404(b** [1] - 23:9

## 5

**5th** [4] - 47:18, 47:19, 47:21, 52:19

## 6

**600** [1] - 1:20
**6th** [1] - 55:13

## 7

**750** [2] - 1:14, 1:18

## 8

**85-year-old** [2] - 27:17, 40:7
**8th** [5] - 46:16, 50:4, 51:3, 51:18, 51:24

## 9

**900** [1] - 1:18

## A

**a.m** [1] - 2:2
**abide** [3] - 7:12, 11:19, 23:15
**ability** [5] - 9:2, 13:2, 13:3, 18:16, 55:10
**able** [5] - 8:12, 14:13, 18:12, 20:7, 39:14
**above-entitled** [1] - 55:8
**accept** [2] - 22:7, 26:5
**accommodation** [10] - 7:18, 8:3, 12:9, 12:10, 13:15, 22:10, 24:17, 24:19, 41:15, 43:9
**accommodations** [2] - 7:7, 32:7
**accurate** [1] - 15:3
**accusations** [2] - 7:2, 7:11
**across** [1] - 22:21
**action** [1] - 2:4
**actions** [2] - 10:4, 26:13
**activity** [1] - 39:4
**acts** [3] - 25:18, 25:22, 41:17
**actual** [5] - 5:4, 16:25, 22:19, 42:2, 45:19
**actually** [2] - 13:16, 28:4
**ad** [1] - 32:12
**ADA** [2] - 24:2, 30:4
**adding** [1] - 52:10
**addition** [1] - 41:1
**additional** [1] - 7:9
**additionally** [1] - 40:8
**address** [9] - 5:6, 11:16, 15:11, 37:3, 38:4, 39:14, 39:16, 53:13, 53:16
**addressed** [1] - 6:4
**addressing** [2] - 10:14, 31:9
**ADHD** [7] - 15:17, 24:12, 24:25, 25:5, 32:6, 39:1, 43:1
**adjourn** [1] - 53:16
**adjourned** [1] - 54:1
**administrative** [1] - 16:15
**admissible** [2] - 9:13, 18:15
**admission** [1] - 33:20
**ads** [1] - 30:9
**advance** [3] - 5:6, 46:1, 46:14
**advantage** [1] - 49:24
**advocate** [1] - 32:17
**affect** [3] - 22:24, 26:11, 29:17
**affected** [1] - 22:18
**affidavit** [3] - 25:5, 32:6, 37:18
**affiliated** [1] - 37:21
**after** [17] - 3:19, 4:21, 4:22, 5:23, 10:24, 10:25, 17:11, 18:21, 22:12, 22:20, 22:22, 25:13, 27:1, 33:6, 37:25, 50:11
**afterwards** [2] - 23:8
**against** [5] - 3:9, 15:20, 40:4, 40:10, 42:15
**agenda** [1] - 37:4
**ago** [4] - 2:20, 4:7, 32:7, 43:2
**agree** [2] - 13:23, 44:23
**agreed** [1] - 34:4
**agreement** [4] - 41:15, 42:12, 53:5, 53:11
**aha** [1] - 22:13
**ahead** [5] - 32:22, 34:21, 38:22, 49:12, 50:25
**aid** [1] - 46:2
**Aided** [1] - 1:25
**al** [1] - 1:3
**allegations** [3] - 3:11, 25:18, 44:4
**alleged** [2] - 18:20, 29:24
**allegedly** [1] - 42:19
**allow** [7] - 44:1, 44:2, 44:7, 45:6, 45:7, 45:14, 52:6
**allowed** [2] - 14:15, 31:25
**allowing** [2] - 44:19, 51:12
**allows** [1] - 27:9
**alone** [2] - 7:17, 32:17
**along** [3] - 2:8, 16:18, 22:13
**aloud** [1] - 39:25
**already** [6] - 4:22, 25:20, 42:23, 45:25, 47:1, 48:16
**alter** [1] - 19:21
**alternative** [1] - 32:17
**although** [1] - 17:18
**always** [1] - 27:11
**amended** [9] - 3:16, 7:14, 11:19, 15:5, 19:20, 25:14, 39:12, 41:14, 51:17
**amendment** [1] - 31:24
**amendments** [1] - 29:22
**among** [1] - 3:16
**amount** [1] - 29:7
**analysis** [1] - 20:8
**and/or** [5] - 40:19, 45:15, 46:21, 46:25, 47:11
**Andrew** [1] - 12:14
**another** [4] - 9:14, 17:2, 17:22, 31:6
**answer** [3] - 15:5, 19:21, 39:12
**anticipating** [1] - 45:1
**anyone** [7] - 2:15, 23:16, 27:24, 34:2, 34:23, 34:24, 38:7
**anything** [18] - 12:3, 12:7, 12:11, 21:2, 21:25, 22:12, 22:21, 22:25, 23:6, 26:9, 26:13, 30:11, 33:16, 36:21, 37:14, 52:23, 53:8, 53:16
**apologies** [1] - 38:23
**apologize** [1] - 38:14
**apparent** [1] - 19:22
**apparently** [2] - 16:22, 37:19
**appeal** [10] - 4:9, 15:15, 15:23, 16:10, 16:22, 17:10, 32:10, 36:8, 41:11, 41:24
**Appeals** [2] - 4:17, 27:9
**appellate** [1] - 39:4
**applicable** [1] - 20:6
**applied** [1] - 23:16
**appraisal** [2] - 20:4, 20:6
**appreciate** [10] - 6:20, 6:21, 8:5, 8:21, 16:19, 17:19, 21:7, 31:7, 41:6, 52:2
**appreciates** [1] - 5:10
**approach** [2] - 39:13, 39:14
**approaching** [1] - 9:21
**appropriate** [7] - 4:17, 8:5, 10:11, 17:24, 29:1, 38:17, 45:5
**approved** [1] - 7:19
**approving** [1] - 44:5
**April** [2] - 41:21, 55:13
**arbiter** [1] - 13:21
**area** [3] - 42:16, 44:21, 52:6
**areas** [4] - 5:4, 5:19, 5:24, 44:9
**aren't** [1] - 23:4
**argued** [2] - 16:7, 16:22
**argues** [1] - 42:11
**argument** [7] - 15:16, 17:2, 17:24, 26:2, 29:17, 33:19, 41:25
**arguments** [2] - 29:15, 42:14
**arisen** [1] - 12:5
**arising** [1] - 25:12
**arm** [1] - 24:1
**arm-chair** [1] - 24:1
**arose** [1] - 2:22
**around** [3] - 11:16, 13:24, 40:21
**arrangements** [1] - 27:24
**ask** [10] - 7:22, 8:25, 9:14, 15:7, 16:17, 24:19, 25:9, 25:15, 33:8, 51:22
**asked** [5] - 14:9, 19:1, 23:23, 24:15, 32:24
**asking** [6] - 12:3, 13:23, 14:13, 16:19,

39:13, 40:20
**assent** [1] - 11:6
**asserted** [3] - 7:15, 12:18, 15:18
**assess** [2] - 7:8, 22:14
**assessment** [1] - 20:3
**assigned** [1] - 29:10
**assist** [1] - 45:19
**assisted** [1] - 3:9
**assume** [4] - 14:18, 18:8, 20:16, 48:4
**attached** [3] - 33:3, 37:17, 39:2
**attack** [1] - 32:12
**attempted** [1] - 14:11
**attention** [2] - 18:25, 52:18
**Audio** [1] - 34:13
**audio** [9] - 18:14, 32:25, 33:8, 36:12, 53:3, 55:7, 55:8, 55:9, 55:11
**audio-recorded** [1] - 55:7
**August** [2] - 21:19, 52:19
**authorities** [2] - 7:12, 13:22
**authority** [3] - 30:15, 30:21, 31:23
**available** [1] - 53:4
**Avenue** [1] - 1:20
**aware** [1] - 12:8
**away** [1] - 35:12

**B**

**BACHMANN** [1] - 55:16
**Bachmann** [1] - 55:5
**back** [25] - 2:19, 3:15, 4:11, 4:21, 5:13, 8:1, 8:9, 8:16, 10:5, 11:19, 21:17, 21:23, 23:9, 23:11, 25:10, 25:23, 26:9, 31:5, 33:23, 34:9, 35:14, 36:3, 37:12, 41:16, 52:18
**backed** [1] - 31:1
**backing** [1] - 22:22
**Baltimore** [3] - 1:15, 1:18, 1:23
**Banbury** [1] - 12:19
**BARTON** [1] - 1:22
**based** [4] - 9:16, 10:22, 32:4, 48:25
**basically** [1] - 20:19
**basis** [4] - 11:24, 35:2, 42:24, 43:3
**bear** [1] - 23:24
**become** [1] - 7:8
**becomes** [3] - 12:22, 13:19, 19:10
**BEFORE** [1] - 1:8
**beforehand** [1] - 3:20
**begin** [3] - 7:11, 11:4, 15:13
**beginning** [2] - 3:17, 41:9
**BEHALF** [2] - 1:11, 1:16
**behavior** [19] - 7:11, 8:23, 9:8, 9:10, 10:25, 15:18, 15:25, 16:9, 16:12, 16:13, 17:18, 18:3, 22:17, 23:6, 23:14, 42:10, 42:25
**behaviors** [1] - 11:18
**being** [9] - 8:12, 12:15, 12:17, 14:17, 24:8, 29:4, 34:19, 40:9, 41:10
**believe** [11] - 5:20, 11:5, 13:5, 15:1, 15:2, 16:10, 26:20, 26:21, 27:25, 30:19, 54:1
**believes** [1] - 14:4
**benefit** [2] - 19:4, 19:14
**benefits** [1] - 19:7
**Bennett** [6] - 13:13, 27:12, 30:1, 30:2, 30:11
**Bennett's** [6] - 13:18, 14:2, 29:11, 30:20, 39:20, 40:19
**besides** [1] - 20:25
**best** [2] - 22:1, 55:10
**better** [4] - 19:16, 41:6, 42:21, 44:11
**between** [7] - 5:17, 6:24, 7:1, 21:18, 27:20, 28:7, 51:18
**beyond** [6] - 5:24, 14:23, 15:11, 31:12, 44:3, 46:25
**bias** [1] - 24:9
**bind** [1] - 34:24
**binding** [1] - 30:21
**bit** [7] - 4:23, 5:23, 10:20, 15:9, 40:7, 44:10, 48:8
**Black** [1] - 30:6
**board** [3] - 22:21, 40:1, 40:13
**book** [1] - 31:1
**borne** [1] - 8:24
**both** [12] - 3:25, 6:6, 9:16, 16:13, 20:7, 20:21, 24:25, 26:7, 29:15, 41:10, 45:14, 49:24
**bound** [1] - 7:16
**boy** [1] - 33:12
**brief** [10] - 3:2, 3:23, 18:13, 19:4, 19:8, 19:22, 30:22, 32:11, 39:24, 53:21
**briefed** [2] - 2:23, 18:9
**briefing** [4] - 15:15, 19:2, 32:24, 33:6
**briefly** [3] - 31:14, 37:12, 52:15
**bring** [4] - 24:23, 36:22, 50:2, 52:17
**bringing** [2] - 6:1, 33:20
**broad** [1] - 49:19
**broader** [2] - 6:1, 9:16
**broadly** [1] - 15:10
**brought** [2] - 17:14, 17:21
**budget** [3] - 21:18, 35:18, 37:1
**built** [1] - 23:10
**burden** [5] - 7:19, 8:23, 13:19, 16:16, 48:11
**burdened** [1] - 40:10
**burdening** [1] - 40:4
**burdens** [1] - 16:3
**burdensome** [1] - 12:3
**business** [2] - 13:11, 13:17
**BY** [4] - 1:12, 1:17, 1:19, 1:22

**C**

**C** [2] - 1:10, 2:1
**calendar** [2] - 46:17, 52:3
**calendars** [1] - 51:23
**call** [2] - 10:8, 41:9
**called** [1] - 37:21
**Calvert** [1] - 1:23
**can't** [3] - 18:6, 20:5, 30:17
**cannot** [1] - 16:12
**capable** [3] - 12:17, 14:17, 14:18
**Captain** [32] - 12:14, 12:18, 12:20, 13:1, 13:7, 13:9, 13:10, 13:16, 13:17, 13:24, 13:25, 14:17, 22:21, 22:22, 27:6, 27:7, 27:16, 28:1, 28:7, 28:9, 28:10, 28:18, 28:25, 29:6, 29:25, 39:17, 40:7, 40:16, 42:17, 42:18
**carefully** [3] - 2:24, 3:24, 5:24
**CASE** [1] - 1:5
**case** [59] - 2:20, 2:21, 3:7, 3:8, 3:17, 4:6, 4:11, 4:13, 4:14, 4:16, 4:21, 5:8, 5:9, 5:11, 5:21, 5:25, 6:2, 6:25, 7:4, 8:1, 11:6, 12:23, 13:14, 15:15, 16:12, 16:20, 16:23, 16:25, 17:5, 17:8, 17:11, 17:13, 17:14, 17:15, 17:20, 18:21, 19:23, 20:12, 22:1, 25:13, 30:25, 31:12, 32:10, 36:5, 36:14, 36:15, 41:10, 41:13, 41:14, 43:1, 43:24, 44:4, 44:10, 44:13, 45:5, 45:15
**cases** [2] - 24:11, 31:22
**causation** [1] - 24:9
**cause** [5] - 4:6, 4:19, 21:11, 42:4, 43:17
**caused** [1] - 16:2
**central** [2] - 27:6, 43:6
**certain** [3] - 3:12, 6:9, 31:7
**certainly** [2] - 8:6, 17:14
**CERTIFICATE** [1] - 55:1
**Certified** [1] - 55:6
**certify** [1] - 55:6
**chair** [1] - 24:1
**challenging** [2] - 19:3, 29:21
**chance** [6] - 3:24, 6:14, 24:21, 26:15, 26:19, 26:22
**change** [6] - 19:24, 19:25, 35:14, 36:20, 36:22, 48:13
**changed** [2] - 35:11, 35:15
**changes** [2] - 19:25, 39:12
**changing** [2] - 19:23, 20:8
**charges** [1] - 26:1
**chief** [1] - 48:24
**children** [2] - 27:15, 28:14
**circle** [1] - 37:12
**Circuit** [18] - 4:10, 5:15, 11:5, 11:12, 12:6, 15:16, 22:6, 22:7, 24:6, 26:5, 26:6, 30:6, 30:21, 32:14, 36:15, 41:25
**Circuit's** [2] - 10:16, 27:1
**circumstance** [1] - 8:16
**circumstances** [1] - 12:20
**cite** [1] - 30:25
**cited** [2] - 30:21, 36:14
**citizens** [2] - 3:10, 29:5
**civil** [2] - 2:4, 2:19
**claim** [1] - 41:23
**claims** [9] - 3:8, 5:9, 5:11, 5:12, 5:22, 5:25, 7:4, 8:1, 16:20
**clarification** [1] - 20:10
**clear** [5] - 8:10, 10:17, 12:16, 36:24, 38:11
**clearly** [3] - 22:8, 29:16, 41:20
**close** [4] - 4:4, 7:15, 11:17, 12:5
**closed** [2] - 18:21, 37:25
**collateral** [3] - 23:2, 23:20, 24:23
**colleague** [1] - 2:11
**combine** [1] - 16:15
**come** [14] - 4:11, 9:18, 10:12, 22:3, 22:20, 30:23, 31:4, 31:10, 32:25, 33:1, 33:13, 41:24, 45:23, 51:23
**comes** [3] - 29:6, 35:25, 43:19
**comfortable** [1] - 48:2
**coming** [6] - 15:11, 17:3, 18:5, 21:23, 30:8, 35:18
**commercial** [1] - 13:11
**committed** [2] - 27:22, 52:20
**committing** [1] - 52:24
**common** [1] - 19:6
**community** [4] - 7:20, 8:4, 9:4, 9:6
**compared** [1] - 55:11
**competing** [1] - 7:7
**complaint** [11] - 5:22, 10:24, 25:14, 25:20,

26:18, 27:3, 41:14, 41:22, 41:23, 42:2
**completed** [2] - 20:4, 51:24
**complexity** [1] - 19:22
**complicated** [1] - 17:8
**comply** [1] - 7:17
**Computer** [1] - 1:25
**Computer -Aided** [1] - 1:25
**con** [1] - 33:22
**concern** [6] - 5:23, 12:24, 19:8, 21:11, 22:2, 38:18
**concerned** [3] - 9:2, 18:12, 29:4
**concerns** [5] - 9:11, 17:7, 17:16, 17:17, 36:20
**concessions** [1] - 35:25
**condition** [6] - 15:17, 22:21, 33:10, 33:11, 33:13, 33:17
**conditions** [3] - 23:16, 24:4, 24:5
**conduct** [17] - 8:11, 8:17, 10:6, 10:23, 11:23, 12:4, 14:13, 14:14, 25:22, 25:25, 40:20, 42:8, 42:10, 43:8, 43:15, 44:3, 44:5
**confer** [3] - 16:24, 53:5, 53:9
**conference** [1] - 2:6
**confess** [1] - 19:3
**confident** [2] - 36:11
**confining** [1] - 30:12
**confirms** [1] - 42:11
**conflict** [1] - 16:13
**conflicts** [1] - 6:23
**conforms** [1] - 34:4
**confrontation** [1] - 16:14
**confuse** [1] - 33:21
**connect** [1] - 15:24
**connected** [1] - 16:8
**connection** [4] - 3:9, 4:23, 16:10, 16:23
**conscious** [1] - 36:3
**consider** [4] - 10:9, 11:3, 29:14, 44:19
**consideration** [2] - 12:9, 52:21
**considered** [1] - 31:23
**consistent** [2] - 38:25, 53:21
**constrained** [2] - 9:4, 12:12
**consult** [1] - 34:6
**consultation** [1] - 4:4
**consulted** [1] - 4:14
**context** [2] - 9:21, 31:9
**continue** [3] - 7:4, 7:20, 25:10
**continued** [4] - 6:24, 7:3, 8:23, 23:24
**continuing** [3] - 7:2, 25:18, 25:22
**continuity** [1] - 33:22
**contradict** [1] - 33:14
**contrary** [1] - 30:15
**control** [2] - 13:2, 13:3
**cooperate** [1] - 8:18
**copied** [2] - 33:4, 39:24
**core** [3] - 17:11, 32:3, 42:9
**corporate** [2] - 34:1
**CORPORATION** [1] - 1:6
**corporation** [11] - 7:3, 7:19, 8:21, 9:1, 9:12, 10:4, 16:3, 16:16, 42:15, 44:5
**Corporation** [3] - 2:5, 40:1, 51:5
**Corporation 's** [1] - 26:12
**corporation 's** [2] - 9:11, 43:9
**correct** [9] - 14:25, 20:13, 29:2, 35:1, 39:4, 46:23, 47:17, 47:22, 55:7
**couldn 't** [2] - 34:7, 34:9
**Counsel** [9] - 2:14, 2:17, 34:14, 40:23, 46:14, 49:17, 50:25, 53:8, 53:9
**counsel** [31] - 2:6, 2:12, 6:18, 7:22, 14:9, 16:17, 21:9, 21:14, 24:13, 25:8, 25:23, 28:6, 31:3, 36:13, 37:12, 38:12, 38:13, 38:15, 38:19, 39:9, 41:6, 43:23, 46:4, 49:18, 53:19
**counter** [1] - 24:5
**counting** [1] - 47:24
**counts** [1] - 25:16
**county** [4] - 33:1, 33:5, 34:4
**course** [9] - 4:6, 8:2, 11:8, 11:23, 25:19, 27:12, 27:20, 36:1, 39:3
**COURT** [66] - 1:1, 2:14, 2:17, 7:22, 7:25, 9:14, 12:13, 13:7, 14:3, 14:20, 15:9, 16:17, 18:17, 18:22, 19:17, 20:10, 20:14, 20:18, 20:24, 21:2, 21:6, 25:8, 28:6, 28:12, 28:18, 28:21, 28:23, 31:3, 32:21, 34:11, 34:14, 34:18, 34:21, 35:4, 36:13, 37:8, 38:12, 38:15, 40:23, 46:7, 46:11, 46:19, 46:21, 46:24, 47:5, 47:9, 47:15, 47:17, 47:19, 47:21, 47:25, 48:15, 48:25, 49:3, 49:6, 49:11, 49:17, 50:12, 50:15, 50:25, 51:9, 52:14, 53:7, 53:15, 53:19, 55:16
**Court** [55] - 2:4, 2:18, 2:24, 3:15, 3:20, 3:24, 4:3, 4:8, 4:11, 4:14, 4:16, 4:17, 5:1, 5:9, 5:20, 5:22, 6:2, 6:3, 6:7, 7:6, 9:17, 9:22, 10:19, 14:21, 14:24, 16:19, 17:7, 17:23, 19:15, 20:9, 21:3, 21:20, 25:11, 27:9, 28:23, 30:19, 31:5, 31:6, 31:10, 31:17, 31:24, 36:22, 37:9, 38:16, 42:1, 42:3, 42:17, 43:1, 43:25, 44:10, 51:9, 52:16, 53:10
**court** [3] - 17:5, 17:15, 33:6
**Court 's** [19] - 5:2, 5:7, 5:12, 5:14, 6:12, 6:16, 9:15, 10:2, 10:22, 32:16, 37:4, 41:3, 41:12, 43:12, 45:22, 46:4, 46:8, 51:17, 52:17
**court 's** [1] - 12:9
**COURTROOM** [1] - 2:3
**cousin** [3] - 27:7, 27:18, 28:10
**cousins** [1] - 28:11
**cousins '** [1] - 28:14
**covenant** [1] - 39:22
**covenants** [10] - 3:13, 7:14, 11:20, 13:12, 13:19, 14:1, 25:21, 29:22, 29:23, 40:19
**covers** [1] - 17:8
**Craig** [5] - 2:12, 23:13, 26:15, 26:16, 27:14
**CRAIG** [1] - 1:22
**create** [1] - 50:18
**created** [1] - 39:5
**critical** [1] - 18:7
**CRR** [1] - 55:16
**current** [1] - 51:16
**currently** [4] - 20:11, 43:11, 45:16, 50:3

## D

**D** [2] - 1:22, 2:1
**damages** [43] - 15:2, 15:3, 15:4, 15:6, 19:18, 19:19, 19:21, 19:23, 20:1, 20:3, 20:11, 31:16, 31:18, 35:4, 35:8, 35:9, 35:19, 35:24, 35:25, 36:2, 36:4, 36:16, 37:13, 39:7, 39:13, 39:14, 43:23, 44:22, 44:23, 44:25, 45:3, 45:5, 45:6, 45:14, 45:24, 46:22, 46:25, 47:11, 48:3, 48:17, 48:20, 52:7
**darn** [1] - 36:11
**date** [5] - 21:14, 47:9, 47:10, 47:15, 49:23
**Dated** [1] - 55:13
**dates** [2] - 49:22, 52:10
**dating** [1] - 41:16
**Davis** [3] - 37:19, 38:1, 38:6
**day** [4] - 35:14, 36:3, 54:2, 55:13
**days** [2] - 26:21, 52:22
**DC** [1] - 1:21
**deadline** [16] - 4:13, 14:23, 26:22, 35:7, 35:8, 47:2, 47:8, 49:7, 49:14, 49:16, 50:10, 51:3, 51:5, 53:2, 53:6, 53:12
**deadlines** [6] - 6:9, 34:23, 35:21, 35:22, 50:1, 52:25
**deal** [2] - 18:25, 45:19
**dealings** [1] - 24:24
**debate** [4] - 29:9, 29:10, 29:12, 30:11
**debating** [1] - 48:18
**December** [1] - 52:19
**decide** [2] - 7:6, 43:7
**deciding** [1] - 10:2
**decision** [7] - 5:14, 11:1, 33:24, 33:25, 34:25, 36:3, 47:3
**decision -making** [3] - 33:24, 33:25, 34:25
**decisions** [6] - 10:7, 22:25, 41:18, 43:9, 44:5, 45:5
**declaration** [2] - 38:1, 39:2
**deeds** [2] - 29:21, 29:22
**deep** [1] - 50:7
**Defendant** [1] - 1:6
**defendant** [18] - 3:18, 3:22, 6:14, 6:18, 20:11, 21:10, 23:5, 25:2, 25:18, 35:23, 37:5, 37:13, 37:23, 45:6, 46:5, 46:16, 48:7, 53:18
**DEFENDANT** [1] - 1:16
**defendant 's** [3] - 6:21, 12:24, 21:8
**defendants** [5] - 2:13, 15:19, 31:15, 42:8, 47:10
**defense** [20] - 14:3, 14:21, 14:22, 14:25, 17:4, 25:11, 35:19, 35:21, 38:15, 38:19, 42:11, 42:20, 43:22, 44:2, 44:14, 44:19, 44:25, 48:2, 52:12, 53:8
**defense 's** [2] - 10:6, 43:15
**definitional** [1] - 30:24
**demand** [1] - 40:2
**denial** [2] - 3:12, 24:6
**denied** [3] - 12:11, 22:10, 30:5
**deny** [5] - 30:6, 43:15, 45:9, 45:10, 45:11
**denying** [1] - 52:5
**depose** [6] - 13:6, 13:23, 13:24, 14:5, 14:21, 26:19
**deposed** [7] - 12:15, 12:17, 26:16, 26:23, 26:24, 34:1, 43:3
**deposing** [1] - 35:24
**deposition** [15] - 11:24, 12:4, 13:6, 14:19, 15:22, 24:22, 26:20, 42:9, 42:16, 42:18, 42:24, 43:3,

44:1, 49:9
**depositions** [8] - 14:13, 14:14, 24:14, 28:24, 31:25, 42:8, 43:16, 49:15
**deprives** [1] - 9:1
**DEPUTY** [1] - 2:3
**designate** [22] - 14:22, 15:1, 15:7, 31:15, 34:5, 34:22, 36:18, 43:22, 44:2, 44:15, 44:19, 44:20, 44:23, 45:6, 45:15, 46:25, 47:10, 47:12, 48:2, 48:9, 48:11, 52:6
**designated** [8] - 20:12, 32:25, 34:16, 35:9, 35:16, 37:20, 48:17, 51:22
**designating** [5] - 14:24, 15:12, 19:9, 45:24, 46:13
**designation** [7] - 39:10, 45:13, 48:24, 49:23, 51:12, 51:15, 53:24
**designations** [2] - 48:4, 52:8
**designee** [2] - 34:1, 34:2
**detail** [1] - 49:22
**details** [1] - 50:1
**determination** [1] - 8:22
**development** [1] - 30:3
**developments** [1] - 5:11
**diagnosis** [11] - 15:17, 16:1, 16:4, 16:11, 16:21, 18:2, 18:3, 18:15, 18:20, 24:1, 43:1
**did** [25] - 19:2, 20:16, 22:4, 22:7, 23:8, 23:13, 24:19, 24:21, 26:5, 30:6, 33:10, 34:2, 34:3, 34:5, 34:6, 34:7, 34:17, 34:22, 35:21, 37:24, 38:18, 39:18, 44:22, 52:15
**didn't** [12] - 11:8, 27:18, 28:8, 32:9, 32:10, 33:3, 33:6, 33:8, 33:10, 35:20, 38:3, 47:5
**difference** [1] - 27:20
**different** [5] - 15:6, 17:14, 17:15, 35:10, 48:12
**difficult** [2] - 7:8, 19:10
**difficulty** [1] - 16:2
**direct** [2] - 41:21, 51:13
**directions** [1] - 26:7
**directly** [2] - 13:9, 43:6
**disabilities** [1] - 40:9
**disability** [3] - 3:11, 15:19, 15:20
**disabled** [7] - 3:10, 12:22, 40:4, 40:7, 40:14, 40:15
**disagreement** [1] - 29:19
**disagreements** [1] - 29:20
**disciplines** [1] - 15:7
**disclose** [2] - 50:19, 50:20
**disclosed** [6] - 16:7, 26:18, 32:5, 33:4, 37:23, 39:8
**disclosure** [2] - 38:25, 48:23
**disclosures** [2] - 46:13, 46:16
**discover** [2] - 11:16, 31:11
**discovery** [55] - 2:23, 3:19, 4:1, 4:7, 4:13, 4:21, 5:3, 5:4, 5:14, 6:15, 6:25, 7:10, 7:15, 9:22, 10:10, 11:18, 11:21, 12:2, 12:6, 12:14, 14:8, 16:7, 17:4, 18:4, 18:13, 18:21, 19:20, 22:17, 23:13, 25:12, 26:14, 26:19, 26:22, 31:9, 32:5, 33:19, 34:10, 34:23, 37:25, 40:21, 41:10, 41:11, 42:4, 42:5, 42:7, 42:16, 42:23, 43:16, 43:21, 45:11, 46:9, 51:24, 53:22
**discriminated** [2] - 3:9, 40:10
**discriminating** [2] - 15:20, 40:3
**discrimination** [2] - 3:11, 22:15
**discriminatory** [3] - 23:24, 24:2, 24:9
**discuss** [5] - 20:7, 24:13, 26:23, 27:5, 53:13
**discussed** [1] - 31:20
**discussing** [3] - 11:11, 26:18, 48:1
**discussion** [8] - 3:4, 3:20, 19:7, 21:6, 21:13, 37:11, 41:5, 53:20
**disfigured** [1] - 24:18
**dispositive** [1] - 39:19
**dispute** [6] - 4:23, 5:17, 5:19, 27:19, 30:18, 42:25
**disputed** [1] - 7:6
**disputes** [1] - 8:2
**disregards** [1] - 13:22
**DISTRICT** [3] - 1:1, 1:1, 1:9
**disturbed** [1] - 40:11
**disturbing** [1] - 40:4
**DIVISION** [1] - 1:2
**do** [49] - 2:15, 4:24, 5:1, 5:20, 6:13, 10:3, 11:21, 11:22, 15:13, 17:4, 19:17, 20:17, 21:20, 22:3, 23:17, 24:1, 26:2, 27:24, 29:8, 30:16, 30:20, 31:11, 31:20, 34:8, 35:7, 35:20, 36:15, 37:2, 37:3, 37:16, 37:23, 38:3, 38:11, 44:9, 44:12, 45:9, 45:17, 46:15, 46:18, 47:3, 48:3, 48:19, 48:22, 49:1, 49:17, 51:9, 51:16, 52:1, 55:6
**documents** [1] - 11:22
**does** [12] - 5:22, 20:11, 20:14, 23:16, 28:23, 29:8, 29:17, 34:11, 34:12, 42:11, 46:24, 50:18
**doing** [2] - 18:7, 52:4
**done** [8] - 12:7, 33:5, 38:5, 47:1, 48:23, 49:21, 50:7, 51:19
**down** [4] - 11:15, 18:12, 30:14, 32:9
**draw** [1] - 25:22
**during** [2] - 24:16, 27:4

## E

**E** [7] - 1:10, 1:14, 1:17, 1:18, 2:1
**each** [1] - 31:25
**earlier** [6] - 26:5, 26:21, 31:5, 32:10, 33:3, 51:22
**early** [1] - 13:13
**ECF** [1] - 51:17
**editor** [1] - 25:6
**effect** [2] - 15:19, 41:4
**effort** [1] - 4:5
**Eighth** [1] - 36:14
**either** [7] - 22:1, 22:7, 26:5, 32:2, 40:22, 44:20, 45:7
**else** [9] - 2:15, 12:19, 21:2, 34:9, 37:14, 38:7, 48:19, 48:22, 53:16
**email** [2] - 39:23, 40:1
**emails** [3] - 11:21, 12:1, 32:13
**enabling** [2] - 40:2, 40:11
**end** [8] - 6:24, 6:25, 21:19, 23:23, 34:10, 47:6, 50:2, 51:21
**ended** [1] - 30:5
**engage** [2] - 9:8, 9:9
**engaged** [2] - 8:11, 11:18
**engineer** [1] - 35:1
**enough** [2] - 17:8, 49:20
**entered** [1] - 41:15
**entitled** [4] - 11:23, 13:5, 16:10, 55:8
**EP** [1] - 27:8
**ESQUIRE** [6] - 1:12, 1:13, 1:13, 1:17, 1:19, 1:22
**essentially** [1] - 32:11
**establish** [2] - 14:4, 40:21
**et** [1] - 1:3
**evaluate** [2] - 18:8, 18:19
**even** [11] - 10:8, 13:4, 14:14, 16:7, 18:4, 27:9, 30:20, 32:15, 33:5, 39:4, 41:16
**events** [1] - 5:12
**ever** [1] - 34:2
**everyone** [3] - 9:6, 26:22, 48:2
**everything** [2] - 51:7
**evidence** [9] - 9:18, 9:24, 10:12, 10:22, 11:7, 11:9, 16:4, 17:1, 22:23
**evidentiary** [2] - 5:5, 31:6
**exactly** [7] - 7:18, 9:2, 9:3, 9:8, 9:10, 26:4, 33:15
**exam** [3] - 24:17, 24:19, 32:7
**examination** [1] - 11:23
**exception** [1] - 31:2
**exchange** [1] - 50:16
**excluded** [1] - 18:9
**excuse** [2] - 16:8, 38:10
**existed** [3] - 11:7, 11:9, 12:10
**expanded** [1] - 19:13
**expect** [2] - 18:10, 19:24
**expeditiously** [1] - 5:8
**expense** [1] - 35:18
**expert** [86] - 15:1, 15:2, 15:3, 15:8, 15:14, 16:11, 18:23, 19:7, 19:9, 19:15, 19:18, 19:19, 20:12, 20:20, 20:21, 31:16, 31:18, 31:21, 32:20, 32:21, 32:23, 33:8, 33:13, 34:3, 34:4, 34:5, 34:7, 34:12, 34:16, 34:19, 35:1, 35:5, 35:9, 35:16, 35:19, 35:24, 35:25, 36:16, 37:13, 37:14, 37:20, 37:22, 38:4, 38:7, 38:25, 39:7, 39:15, 43:21, 43:23, 44:2, 44:7, 44:19, 44:21, 44:23, 44:24, 45:1, 45:7, 45:8, 45:12, 45:13, 45:14, 45:16, 45:24, 45:25, 46:16, 46:25, 47:12, 48:3, 48:13, 48:17, 48:20, 50:7, 50:15, 51:4, 51:15, 51:24, 53:24
**experts** [23] - 14:23, 14:24, 15:10, 15:12, 19:4, 20:7, 20:25, 22:22, 31:14, 35:20, 38:20, 43:22, 43:24, 45:15, 46:13, 47:11, 49:9, 49:15, 49:23, 50:4, 50:19, 51:6, 52:6
**explain** [4] - 15:25, 16:2, 16:12, 28:7
**explained** [1] - 43:24
**explains** [1] - 18:3
**explanation** [2] - 15:24, 16:8
**explore** [7] - 11:24, 12:5, 16:11, 18:2,

18:13, 42:24, 43:4
**exposure** [1] - 36:10
**expressly** [1] - 33:12
**extended** [4] - 28:3, 28:19, 30:12, 42:20
**extent** [2] - 5:4, 6:11
**extreme** [1] - 27:2

## F

**facilitating** [1] - 40:3
**facility** [1] - 3:10
**facing** [1] - 36:10
**fact** [12] - 15:11, 22:12, 22:19, 22:20, 22:23, 23:25, 30:23, 34:16, 42:7, 42:16, 43:16, 45:11
**factor** [1] - 24:10
**factors** [1] - 20:1
**facts** [8] - 11:16, 12:10, 13:6, 13:24, 14:16, 25:13, 40:21, 40:22
**factual** [3] - 11:24, 16:4, 20:10
**fair** [1] - 38:5
**faith** [7] - 29:14, 29:17, 29:18, 30:4, 30:17, 30:18, 35:2
**families** [1] - 28:3
**family** [14] - 3:13, 27:10, 27:13, 27:21, 27:25, 28:2, 28:16, 28:19, 30:13, 39:18, 40:16, 42:15, 42:20
**far** [1] - 49:1
**father** [2] - 28:11, 28:12
**favor** [1] - 29:16
**February** [5] - 1:9, 20:4, 51:21, 55:9
**FEDERAL** [1] - 55:16
**federal** [1] - 24:10
**feel** [2] - 40:25, 41:6
**few** [4] - 2:20, 4:2, 8:15, 52:22
**FHA** [1] - 25:17
**fiance** [1] - 28:1
**fighting** [1] - 36:4
**figure** [2] - 8:12, 23:13
**file** [2] - 51:13, 53:23
**filed** [10] - 3:18, 3:21, 3:22, 4:16, 5:25, 6:3, 8:1, 8:16, 25:2, 25:3
**filings** [1] - 3:25
**final** [1] - 26:20
**finally** [1] - 39:16
**financial** [1] - 16:16
**find** [4] - 22:19, 34:7, 34:9
**findings** [2] - 30:22, 31:7
**fine** [2] - 29:9, 29:12
**finish** [1] - 37:2
**finished** [1] - 38:16
**firm** [2] - 37:5, 37:6
**firmly** [1] - 27:22
**first** [14] - 4:12, 10:15, 11:16, 16:9, 18:8, 25:2, 28:10, 28:11, 28:14, 42:8, 43:2, 46:3, 48:9, 48:11
**fit** [2] - 5:4, 41:7
**fits** [1] - 43:10
**five** [1] - 51:1
**flag** [1] - 29:4
**floor** [2] - 36:2, 38:15
**focus** [2] - 4:15, 5:12
**focused** [1] - 22:9
**focusing** [1] - 10:19
**follow** [5] - 8:18, 9:14, 24:18, 24:20, 28:8
**follow-up** [2] - 9:14, 24:20
**FOR** [1] - 1:1
**forecloses** [1] - 11:11
**foregoing** [1] - 55:7
**form** [2] - 2:24, 27:20
**formerly** [1] - 44:5
**forward** [7] - 3:1, 3:7, 5:8, 25:23, 25:25, 30:8, 51:25
**foundation** [1] - 32:16
**four** [5] - 8:24, 10:24, 10:25, 17:11, 50:20
**Fourth** [19] - 4:9, 5:15, 10:16, 11:4, 11:5, 11:12, 12:6, 15:16, 22:5, 22:6, 22:7, 24:6, 26:5, 26:6, 27:1, 30:6, 30:21, 32:14, 41:25
**frame** [2] - 42:25, 46:12
**framed** [1] - 36:9
**framing** [2] - 22:7, 26:6
**frankly** [2] - 16:5, 38:7
**fraud** [1] - 7:16
**fresh** [1] - 45:3
**front** [7] - 6:5, 11:9, 15:16, 16:23, 17:5, 25:1, 44:6
**FTR** [2] - 1:25, 55:9
**full** [2] - 6:6, 13:21
**fully** [3] - 2:23, 21:13, 22:8
**further** [6] - 6:14, 11:1, 23:22, 33:19, 43:4, 43:16
**future** [1] - 9:3

## G

**G** [1] - 2:1
**game** [1] - 39:4
**gap** [6] - 18:14, 32:25, 33:8, 34:13, 36:12, 53:3
**gate** [1] - 29:5
**gatehouse** [1] - 29:5
**gave** [1] - 26:7
**general** [2] - 10:22, 27:21
**generally** [1] - 28:23
**Genth** [1] - 2:9
**GENTH** [1] - 1:13
**gentleman** [1] - 37:18
**Geoffrey** [1] - 2:9
**GEOFFREY** [1] - 1:13
**gets** [1] - 17:13
**getting** [5] - 21:17, 24:3, 30:10, 50:4
**Gibson** [12] - 2:5, 3:14, 22:9, 26:12, 28:16, 30:3, 40:1, 40:6, 41:19, 51:5, 52:20
**GIBSON** [2] - 1:3, 1:6
**GIC** [3] - 40:2, 40:5, 40:11
**give** [7] - 6:6, 6:14, 18:6, 34:23, 46:17, 48:5, 52:21
**given** [2] - 18:25, 21:21
**gives** [2] - 10:14, 49:5
**giving** [1] - 35:12
**goal** [1] - 5:7
**GOLD** [1] - 1:25
**Gold** [1] - 55:9
**good** [20] - 2:10, 2:14, 2:17, 4:6, 4:19, 21:11, 29:14, 29:16, 29:18, 30:4, 30:17, 30:18, 35:2, 38:18, 40:25, 42:4, 43:17, 47:14, 53:15, 54:1
**got** [2] - 31:22, 34:3
**gotten** [2] - 47:23, 52:23
**govern** [2] - 7:14, 13:13
**governing** [2] - 7:12, 20:6
**GRAHAM** [1] - 1:14
**grant** [2] - 45:9, 45:13
**granted** [1] - 36:7
**granting** [1] - 52:5
**great** [1] - 18:25
**GRIGGSBY** [1] - 1:8
**Grimm** [1] - 53:3
**grounds** [2] - 17:5, 32:18
**GROUP** [1] - 1:3
**group** [7] - 3:10, 12:25, 13:2, 13:14, 19:14, 25:21, 37:24
**Group** [4] - 2:4, 30:3, 37:22, 40:6
**guess** [12] - 8:5, 9:15, 10:1, 10:9, 10:20, 11:1, 14:7, 16:24, 17:6, 17:18, 17:22
**guidance** [1] - 22:5
**guide** [1] - 5:13

## H

**H** [1] - 1:13
**hadn't** [3] - 33:3, 33:4
**handle** [1] - 52:16
**happen** [2] - 14:23, 31:22
**happened** [10] - 8:15, 10:18, 13:15, 17:10, 17:11, 22:1, 23:7, 26:3, 26:9, 41:20
**happens** [3] - 25:7, 31:22, 36:6
**happy** [6] - 11:3, 15:13, 16:24, 49:25, 50:2, 53:13
**hard** [3] - 33:7, 33:12, 33:18
**hasn't** [2] - 12:7, 13:15
**having** [4] - 5:23, 19:14, 20:7, 21:14
**he's** [2] - 12:17, 32:15
**head** [2] - 21:25, 23:3
**health** [1] - 17:18
**Healthcare** [1] - 37:21
**hear** [12] - 5:21, 11:3, 17:6, 20:18, 21:9, 21:12, 31:13, 34:14, 38:18, 45:22, 47:5, 49:12
**heard** [6] - 6:6, 6:14, 10:1, 21:21, 34:3, 37:15
**hearing** [3] - 9:10, 10:23, 20:19
**HEARING** [1] - 1:8
**hearsay** [1] - 31:2
**heart** [1] - 44:9
**held** [5] - 24:6, 30:1, 30:2, 30:11
**help** [3] - 7:25, 19:15, 50:22
**helpful** [14] - 4:3, 7:23, 16:18, 20:8, 21:6, 37:11, 38:20, 41:2, 41:5, 44:16, 44:17, 45:18, 51:20, 53:20
**hereby** [1] - 55:6
**himself** [3] - 13:21, 39:8, 40:13
**history** [2] - 3:3, 25:19
**hit** [2] - 21:25, 23:3
**HOA** [3] - 40:2, 40:6, 40:11
**hoc** [1] - 22:4
**holds** [1] - 27:16
**Home** [3] - 2:4, 30:3, 41:18
**home** [16] - 3:10, 12:25, 13:3, 13:5, 13:11, 13:14, 19:14, 25:21, 37:24, 39:21, 40:5, 40:9, 40:15, 40:18, 42:19
**HOME** [1] - 1:3
**homes** [1] - 3:13
**hominem** [1] - 32:12
**honestly** [2] - 49:18, 49:21
**Honor** [66] - 2:10, 2:16, 6:19, 12:24, 18:1, 21:1, 21:4, 21:15, 21:17, 21:25, 22:3, 22:14, 22:17, 23:1, 23:3, 23:13, 23:22, 24:3, 25:7, 26:5, 26:8, 26:11, 26:16, 26:25, 27:18, 27:19, 27:23, 29:24, 30:15, 30:21, 32:11, 32:23, 33:9, 33:15, 33:19, 34:6, 34:15, 35:17, 35:23, 36:6, 37:2, 37:3, 37:16, 38:9, 38:14, 38:23, 39:16, 39:23, 39:25, 46:6, 46:10, 46:15, 47:3, 47:16, 47:24, 48:7, 49:10, 50:14, 50:23, 51:2, 52:13, 52:15, 53:17, 54:3, 54:4
**HONORABLE** [1] - 1:8
**hope** [2] - 3:4, 49:18
**hopefully** [1] - 45:18
**hopes** [1] - 2:25
**hoping** [1] - 23:9
**hour** [2] - 40:24, 51:10
**hours** [1] - 26:16
**huge** [1] - 35:14
**hybrid** [2] - 34:16, 44:13

## I

**identified** [3] - 12:19, 12:20, 12:21
**identify** [1] - 2:7
**ignores** [1] - 38:4
**imagine** [1] - 20:5
**immediately** [2] - 4:25, 40:2
**impact** [5] - 7:4, 7:20, 20:1, 23:6, 49:15
**impacted** [1] - 6:11
**importance** [1] - 25:24
**important** [4] - 5:1, 5:20, 44:12, 45:3
**impose** [3] - 8:4, 8:23, 16:15
**imposed** [2] - 16:3, 33:17
**impossible** [2] - 24:8, 32:15
**inappropriate** [3] - 31:21, 34:10, 35:3
**incident** [1] - 29:3
**incidental** [1] - 15:21
**inclined** [4] - 43:25, 44:18, 45:6, 45:9
**include** [4] - 41:23, 49:9, 53:11, 53:13
**included** [4] - 27:12, 27:25, 33:11, 34:25
**including** [2] - 2:21, 43:7
**incredible** [2] - 23:20, 29:6
**indicate** [1] - 12:11
**indicated** [4] - 4:17, 11:6, 41:9, 44:13
**indiscernible** [12] - 10:5, 11:25, 15:1, 24:1, 26:8, 35:11, 36:20, 37:8, 41:22, 42:5, 42:12, 52:2
**indiscernible }** [6] - 17:7, 21:24, 24:21, 27:22, 28:17, 36:9
**individual** [1] - 42:18
**individuals** [4] - 14:5, 14:21, 28:5, 38:17
**induced** [1] - 7:16
**indulging** [1] - 21:7
**inform** [1] - 5:2
**informally** [2] - 14:12, 14:15
**information** [10] - 8:25, 14:4, 14:6, 14:10, 29:7, 29:10, 39:18, 42:21, 43:18, 45:4
**informed** [1] - 43:8
**initial** [2] - 4:2, 4:13
**initially** [2] - 4:16, 6:3
**inject** [1] - 39:5
**input** [1] - 41:6
**insisted** [1] - 30:4
**inspect** [1] - 34:2
**inspected** [1] - 33:2
**inspector** [2] - 32:25, 33:14
**instead** [2] - 50:20, 52:1
**instruct** [1] - 52:7
**instructed** [2] - 23:17, 29:13
**intend** [1] - 16:1
**intent** [1] - 23:24
**interactions** [2] - 7:1, 41:17
**interest** [1] - 27:16
**interpretations** [1] - 32:17
**interrogatory** [3] - 15:5, 19:21, 39:12
**interrupt** [3] - 25:9, 31:3, 40:23
**introduced** [1] - 18:20
**investor** [3] - 13:1, 14:18, 40:15
**investors** [2] - 40:4, 40:8
**inviting** [1] - 53:22
**involve** [1] - 3:11
**involved** [1] - 7:21
**involves** [2] - 3:8, 29:24
**irrational** [1] - 32:13
**irrelevant** [3] - 22:1, 32:2, 43:5
**ISLAND** [2] - 1:3, 1:6
**Island** [9] - 2:5, 3:14, 26:12, 28:16, 40:1, 40:6, 41:19, 51:5
**island** [6] - 7:3, 7:13, 7:14, 9:3, 13:13, 16:14
**Island's** [2] - 22:9, 52:20
**issue** [45] - 9:16, 9:18, 9:20, 10:3, 10:10, 10:11, 10:14, 10:21, 10:24, 12:13, 12:23, 15:17, 16:25, 17:22, 17:23, 18:10, 19:1, 19:2, 19:4, 22:19, 24:12, 24:24, 27:5, 29:25, 31:6, 32:3, 33:9, 33:10, 36:4, 38:8, 38:24, 39:1, 40:17, 41:4, 43:6, 44:4, 44:6, 44:11, 44:12, 44:13, 44:25, 51:11, 52:4
**issued** [1] - 3:15
**issues** [56] - 2:22, 4:10, 4:15, 5:4, 5:6, 6:2, 6:4, 6:13, 6:20, 8:10, 9:19, 9:23, 9:25, 10:13, 10:16, 10:17, 12:5, 13:7, 13:9, 13:20, 15:22, 15:24, 16:6, 16:25, 17:11, 17:18, 19:7, 19:16, 22:7, 22:8, 23:4, 23:5, 23:23, 26:6, 26:23, 27:2, 29:18, 31:9, 38:2, 38:7, 39:5, 39:19, 41:7, 41:13, 41:14, 41:22, 42:6, 42:9, 43:4, 43:11, 43:19, 44:14, 44:18, 45:3, 45:19, 46:1

## J

**Jeanette** [2] - 27:7, 28:11
**job** [1] - 18:8
**join** [1] - 2:18
**joint** [1] - 53:23
**Judge** [13] - 13:13, 13:18, 14:2, 27:12, 29:11, 30:1, 30:2, 30:11, 30:20, 39:20, 40:19, 53:3
**JUDGE** [1] - 1:9
**judgment** [21] - 4:8, 4:10, 4:18, 6:4, 8:24, 10:19, 11:7, 11:10, 17:16, 25:3, 25:4, 25:7, 32:6, 36:7, 37:18, 37:25, 39:2, 41:12, 44:11
**judicial** [4] - 27:10, 30:16, 30:22, 32:14
**July** [7] - 49:4, 49:6, 50:4, 50:10, 51:3, 51:18, 51:24
**jump** [1] - 32:9
**jumped** [1] - 30:14
**June** [10] - 47:18, 47:19, 47:20, 47:21, 47:24, 47:25, 48:4, 49:2, 49:3
**jury** [35] - 4:18, 5:5, 5:20, 7:8, 8:8, 8:12, 8:25, 9:18, 9:23, 9:25, 10:3, 10:9, 10:12, 11:2, 19:7, 19:15, 20:9, 22:2, 22:9, 23:17, 29:13, 29:14, 30:17, 30:23, 33:21, 43:6, 43:11, 43:13, 43:19, 44:6, 44:16, 45:4, 45:18, 51:1
**jury's** [1] - 9:9
**justifications** [1] - 22:4
**justify** [1] - 33:12
**Justin** [1] - 2:9
**JUSTIN** [1] - 1:13

## K

**K** [1] - 1:8
**KATHERINE** [1] - 1:19
**Katherine** [1] - 2:11
**keep** [10] - 21:17, 21:19, 21:21, 21:23, 22:16, 23:15, 29:21, 30:12, 51:7
**keeping** [1] - 51:16
**key** [1] - 25:13
**kind** [5] - 10:14, 16:18, 27:20, 49:25, 52:2
**kinds** [2] - 9:8, 29:20
**KLEPPER** [37] - 1:12, 2:8, 2:16, 21:15, 26:4, 28:9, 28:13, 28:20, 28:22, 29:2, 31:20, 32:23, 34:13, 34:15, 34:20, 34:22, 35:6, 36:14, 38:9, 38:11, 38:14, 38:23, 46:10, 47:2, 47:7, 47:13, 47:16, 47:18, 47:20, 47:23, 49:10, 50:14, 50:23, 51:2, 52:15, 53:17, 54:4
**Klepper** [3] - 2:8, 21:16, 39:17
**know** [30] - 2:25, 7:5, 8:20, 10:8, 11:2, 18:10, 18:18, 18:24, 21:9, 22:17, 27:18, 28:13, 28:14, 28:15, 29:2, 29:3, 29:5, 33:5, 33:22, 35:17, 35:22, 36:3, 36:7, 36:10, 37:2, 44:11, 48:21, 51:22, 52:16
**known** [2] - 35:14, 43:2
**knows** [2] - 12:24, 23:5
**KRAMON** [1] - 1:14

## L

**lack** [1] - 21:11
**largely** [2] - 31:12, 43:18
**last** [8] - 3:15, 3:18, 5:15, 8:15, 8:20, 8:24, 30:22, 42:10
**lastly** [2] - 6:8, 44:22
**late** [5] - 36:15, 39:4, 43:19, 50:10
**later** [3] - 18:9, 24:22, 52:22
**law** [5] - 12:8, 24:10, 25:17, 30:7, 32:13
**lawyer** [1] - 19:3
**lay** [2] - 3:2, 25:16
**layers** [1] - 22:18
**layperson** [2] - 19:6, 19:10
**lead** [1] - 22:10
**lead-up** [1] - 22:10
**learn** [1] - 22:12
**learned** [2] - 21:22, 21:23
**least** [8] - 10:21, 15:18, 20:16, 24:8, 37:22, 38:24, 48:17, 53:14
**legal** [5] - 21:19, 29:9, 29:10, 29:12, 29:19
**lens** [1] - 42:3
**let's** [5] - 18:22, 21:9, 29:16, 35:4, 36:21
**letter** [1] - 30:7
**liability** [3] - 36:4, 36:5, 36:10
**light** [5] - 21:13, 26:2, 40:3, 40:10, 45:21
**limine** [19] - 6:10, 9:20, 10:11, 10:21, 11:14, 11:15, 17:2, 17:23, 17:25, 18:5, 18:14, 23:4, 23:5, 26:8, 50:4, 50:8, 50:13, 51:3, 51:25
**limit** [1] - 12:7
**limited** [9] - 7:9, 8:25, 11:6, 11:25, 12:10, 16:5, 18:18, 18:19, 40:21
**line** [2] - 18:12, 24:14
**lines** [1] - 16:19
**link** [1] - 23:9
**list** [1] - 41:23
**listed** [1] - 14:19
**litigation** [8] - 4:23, 5:17, 5:18, 6:22, 8:14, 13:4, 37:1, 43:20

**little** [4] - 5:23, 15:9, 48:8, 51:19
**live** [1] - 13:16
**living** [4] - 3:10, 12:19, 12:21, 13:10
**LKG-20-0891** [1] - 2:4
**LLC** [3] - 1:3, 2:5, 27:13
**LLCs** [3] - 27:12, 28:3, 28:16
**LLP** [3] - 1:17, 1:20, 1:22
**load** [1] - 23:11
**located** [1] - 3:13
**locked** [1] - 36:1
**long** [6] - 5:17, 7:20, 17:8, 25:19, 50:21
**long-standing** [2] - 5:17
**longer** [1] - 20:6
**longtime** [1] - 28:1
**look** [2] - 18:4, 51:23
**looked** [1] - 17:15
**looking** [7] - 8:8, 14:25, 25:14, 42:3, 45:21, 46:17, 52:3
**looks** [1] - 3:1
**loses** [1] - 36:7
**lost** [1] - 20:8
**loud** [1] - 10:3
**Lucy** [7] - 7:2, 7:20, 8:11, 8:20, 8:22, 9:4, 9:7
**Lucy's** [2] - 7:12, 8:5
**Lussi** [42] - 11:17, 12:18, 12:25, 13:6, 13:15, 13:21, 13:24, 14:15, 15:2, 15:22, 16:2, 19:13, 23:6, 23:13, 24:1, 24:7, 24:15, 24:16, 24:23, 25:4, 26:15, 26:16, 26:19, 26:24, 27:14, 27:23, 28:24, 29:3, 29:21, 30:19, 31:23, 32:12, 39:8, 39:23, 40:2, 40:13, 40:17, 40:22, 42:9, 42:23, 43:16, 48:20
**Lussi's** [13] - 13:11, 15:17, 16:4, 16:21, 17:18, 22:17, 27:7, 28:11, 42:14, 42:20, 43:8, 44:1, 44:4
**LYDIA** [1] - 1:8

## M

**M** [3] - 1:12, 55:5, 55:16
**made** [11] - 5:16, 6:23, 7:2, 8:21, 10:7, 15:16, 16:9, 22:24, 36:2, 36:24, 41:18
**mainly** [1] - 49:22
**makes** [3] - 44:16, 45:17, 51:20
**making** [7] - 10:7, 18:5, 33:21, 33:24, 33:25, 34:25, 35:25
**manifest** [1] - 23:14
**many** [7] - 4:12, 4:21, 23:2, 25:12, 26:17, 28:4, 32:7
**Mark** [1] - 37:19
**market** [1] - 20:1
**MARYLAND** [1] - 1:1
**Maryland** [5] - 1:15, 1:18, 1:23, 24:11, 25:17
**Massachusetts** [1] - 1:20
**materials** [1] - 32:5
**matter** [7] - 2:3, 2:19, 4:4, 4:20, 16:1, 32:13, 55:8
**matters** [9] - 3:6, 12:23, 23:2, 23:14, 23:21, 25:11, 30:18, 34:19, 39:25
**MBA** [2] - 37:21
**mean** [4] - 18:7, 22:6, 23:22, 50:24
**means** [1] - 50:12
**measures** [1] - 9:12
**mechanism** [1] - 12:2
**mediation** [10] - 37:5, 37:8, 52:24, 52:25, 53:1, 53:2, 53:4, 53:6, 53:12, 53:25
**mediations** [1] - 52:17
**mediators** [1] - 52:18
**medical** [1] - 18:20
**meeting** [1] - 52:19
**meets** [1] - 33:2
**member** [10] - 27:14, 27:15, 27:21, 27:25, 28:19, 30:13, 39:18, 40:17, 42:19
**members** [4] - 27:15, 28:2, 28:16, 42:15
**memorandum** [1] - 31:1
**mental** [1] - 17:18
**mention** [2] - 15:21, 52:16
**mentioned** [2] - 7:13, 39:11
**mere** [1] - 32:3
**Merit** [1] - 55:5
**methodology** [2] - 19:24, 36:21
**might** [10] - 4:2, 6:11, 20:21, 27:22, 31:10, 31:11, 44:16, 48:12, 50:6
**mind** [5] - 22:9, 24:4, 26:12, 27:3, 51:16
**mindset** [4] - 22:14, 22:16, 22:24, 35:10
**mine** [1] - 28:15
**mini** [2] - 17:17, 23:20
**mini-trial** [1] - 17:17
**mini-trials** [1] - 23:20
**minor** [1] - 36:4
**minutes** [1] - 51:1
**misrepresented** [1] - 40:22
**mitigate** [1] - 36:12
**model** [1] - 20:4
**modest** [1] - 21:20
**modify** [1] - 4:5
**modifying** [1] - 4:20
**moment** [3] - 3:2, 20:18, 27:11
**Monday** [2] - 51:14, 53:11
**monitoring** [1] - 29:3
**months** [1] - 2:20
**morning** [3] - 2:10, 2:14, 2:19
**MORRONE** [1] - 1:19
**Morrone** [1] - 2:12
**motion** [39] - 2:24, 2:25, 3:4, 3:5, 3:18, 3:20, 4:11, 5:3, 6:6, 6:7, 6:15, 9:20, 10:11, 10:19, 10:21, 11:14, 11:15, 17:2, 17:23, 17:25, 18:5, 18:11, 18:14, 21:3, 21:10, 21:11, 25:2, 37:10, 37:18, 39:2, 39:24, 40:25, 41:4, 41:12, 45:10, 46:5, 46:8, 52:5, 53:22
**motions** [12] - 4:8, 4:9, 6:10, 23:4, 23:5, 26:8, 41:11, 50:3, 50:7, 50:13, 51:3, 51:25
**MOTIONS** [1] - 1:8
**motivated** [2] - 24:7, 24:8
**motivating** [1] - 24:10
**move** [3] - 3:4, 5:8, 51:25
**moved** [1] - 4:22
**moving** [1] - 5:24
**MR** [36] - 2:8, 2:16, 21:15, 26:4, 28:9, 28:13, 28:20, 28:22, 29:2, 31:20, 32:23, 34:13, 34:15, 34:20, 34:22, 35:6, 36:14, 38:9, 38:11, 38:14, 38:23, 46:10, 47:2, 47:7, 47:13, 47:16, 47:18, 47:20, 47:23, 49:10, 50:14, 50:23, 51:2, 52:15, 53:17, 54:4
**Mr** [65] - 2:12, 7:2, 7:12, 7:20, 8:5, 8:11, 8:20, 8:22, 9:4, 9:7, 11:17, 12:17, 12:25, 13:6, 13:11, 13:15, 13:21, 13:24, 14:15, 15:17, 15:21, 16:2, 16:4, 16:21, 17:17, 19:13, 22:17, 23:6, 24:1, 24:7, 24:14, 24:15, 24:18, 24:23, 25:4, 26:19, 26:24, 27:23, 28:24, 29:3, 29:21, 30:19, 31:23, 32:12, 38:1, 38:6, 39:8, 39:17, 39:23, 40:1, 40:13, 40:17, 40:22, 42:9, 42:13, 42:23, 43:7, 43:10, 43:16, 44:1, 44:4, 48:20
**Ms** [4] - 24:13, 33:11, 38:22, 49:12
**MS** [38] - 2:10, 6:19, 7:24, 8:21, 11:4, 12:16, 13:10, 14:9, 15:4, 15:13, 17:25, 18:18, 18:24, 19:19, 20:13, 20:16, 20:23, 21:1, 21:4, 37:16, 38:10, 38:24, 46:6, 46:15, 46:20, 46:23, 48:7, 48:20, 49:2, 49:4, 49:8, 49:14, 50:9, 50:18, 52:13, 53:9, 53:18, 54:3
**much** [10] - 2:18, 19:17, 19:24, 28:15, 37:4, 41:5, 41:6, 41:8, 53:7, 53:19
**multiple** [1] - 22:18

## N

**N** [2] - 1:10, 2:1
**NADINE** [1] - 55:16
**Nadine** [1] - 55:5
**nail** [2] - 21:25, 23:3
**named** [1] - 37:18
**nature** [1] - 3:25
**necessary** [2] - 14:8, 28:25
**need** [22] - 3:6, 5:6, 8:10, 11:15, 17:4, 18:1, 20:22, 22:17, 23:12, 26:14, 26:15, 36:8, 36:12, 36:16, 43:6, 43:24, 44:24, 49:4, 49:11, 50:16, 53:12, 53:16
**needed** [3] - 15:10, 32:24, 42:5
**needs** [3] - 14:4, 43:13, 51:6
**never** [5] - 16:8, 30:5, 34:3, 35:9
**new** [3] - 21:22, 21:23, 42:18
**next** [3] - 2:20, 12:13, 51:13
**NILES** [1] - 1:22
**nilly** [1] - 30:10
**Nipper** [1] - 30:25
**nonconventional** [1] - 19:12
**none** [1] - 26:11
**nonetheless** [1] - 5:11
**note** [2] - 50:3, 50:17
**noted** [3] - 16:22, 19:22, 30:14
**nothing** [4] - 11:10, 29:23, 33:18, 37:23
**notice** [2] - 27:10, 32:15
**November** [5] - 3:17, 3:21, 3:22, 4:24, 50:5
**NUMBER** [1] - 1:5
**number** [5] - 2:4, 6:22, 8:2, 10:21, 23:20
**NW** [1] - 1:20

## O

**O** [1] - 2:1
**oath** [1] - 14:16
**objection** [1] - 19:8
**objective** [1] - 33:18
**objectively** [2] - 23:14, 26:12
**obligations** [1] - 29:19
**observation** [2] - 4:12, 5:16
**observations** [2] - 4:2, 6:5
**obviously** [4] - 4:3, 8:14, 15:10, 18:9
**occupancy** [4] -

13:12, 13:25, 19:13, 39:21
**occupant** [2] - 12:18, 40:15
**occupants** [2] - 40:5, 40:9
**occupying** [1] - 13:4
**occurred** [8] - 3:19, 5:13, 10:23, 11:12, 25:25, 26:21, 41:17, 41:18
**October** [2] - 3:15, 3:18
**odd** [1] - 48:8
**OF** [5] - 1:1, 1:8, 1:11, 1:16, 55:1
**offered** [2] - 12:11, 38:1
**offering** [1] - 15:6
**OFFICIAL** [2] - 55:1, 55:16
**oh** [3] - 29:24, 33:7, 36:8
**older** [1] - 19:24
**ON** [3] - 1:3, 1:11, 1:16
**once** [2] - 45:21, 52:9
**one** [25] - 2:21, 5:2, 7:5, 10:20, 11:25, 12:18, 13:1, 17:5, 17:21, 20:12, 20:14, 25:11, 25:15, 26:20, 27:15, 32:22, 34:6, 38:13, 40:14, 40:15, 42:4, 49:11, 52:24
**ongoing** [2] - 7:1, 8:22
**open** [2] - 42:4, 53:1
**opening** [1] - 39:24
**operate** [1] - 19:14
**operated** [1] - 13:3
**operation** [2] - 8:6, 37:24
**opinion** [7] - 10:17, 11:10, 27:1, 27:9, 37:22, 38:1, 44:25
**opportunity** [11] - 6:6, 12:4, 18:2, 18:19, 38:8, 39:3, 39:14, 40:20, 48:10, 48:13, 49:24
**oppose** [1] - 23:12
**opposed** [2] - 4:18, 48:24
**opposes** [1] - 21:10
**opposing** [1] - 25:23
**opposition** [5] - 3:21, 25:3, 25:4, 27:7, 32:11
**oral** [2] - 16:13, 32:7
**orally** [2] - 24:17, 24:19
**order** [23] - 3:16, 4:20, 6:8, 13:18, 14:2, 19:13, 29:11, 30:16, 30:19, 30:20, 38:3, 39:20, 40:19, 41:4, 43:12, 45:22, 51:12, 51:17, 52:4, 52:10, 52:25, 53:3, 53:21
**ordered** [1] - 13:13
**ordinarily** [1] - 48:10
**ordinary** [1] - 12:2
**original** [1] - 6:25
**originally** [1] - 20:3
**others** [3] - 7:3, 9:17, 16:14
**ought** [3] - 13:5, 38:8, 48:23
**our** [22] - 2:20, 2:25, 7:13, 12:6, 19:8, 19:22, 22:2, 23:23, 27:6, 29:16, 30:22, 30:25, 32:5, 34:25, 35:8, 35:15, 38:3, 39:24, 41:9, 48:8, 49:20, 50:19
**ours** [1] - 48:24
**outcome** [1] - 18:11
**outright** [1] - 11:20
**outside** [1] - 28:2
**over** [9] - 22:16, 25:20, 29:10, 29:19, 30:11, 30:18, 40:24, 42:10
**overlap** [1] - 5:10
**overview** [1] - 6:20
**own** [6] - 19:9, 27:12, 28:3, 28:16, 45:1
**owned** [2] - 28:4, 40:5
**owner** [2] - 13:1, 40:14
**owner/investor** [1] - 40:8
**owner/investor/occupant** [1] - 12:22
**owner/operator** [1] - 12:25
**owners** [2] - 40:5, 40:8
**owns** [1] - 27:13

## P

**P** [3] - 1:10, 2:1
**P.A** [1] - 1:14
**page** [3] - 30:22, 30:25, 39:24
**papers** [4] - 5:23, 7:13, 41:1, 50:15
**parker** [2] - 43:10, 43:17
**Parker** [27] - 12:14, 12:18, 12:21, 13:1, 13:7, 13:9, 13:10, 13:16, 13:24, 14:17, 22:22, 27:6, 27:7, 27:16, 28:7, 28:9, 28:10, 28:18, 28:25, 29:6, 29:25, 39:17, 40:7, 40:16, 42:17, 42:18
**Parker's** [4] - 13:17, 13:25, 28:1, 28:10
**part** [14] - 24:8, 28:8, 31:8, 33:23, 35:6, 36:25, 42:1, 42:14, 45:9, 45:10, 52:5, 53:10, 53:12
**particular** [4] - 19:1, 19:11, 27:5, 44:21
**particularly** [2] - 12:3, 19:5
**parties** [31] - 3:19, 4:4, 4:13, 5:1, 5:18, 5:19, 6:24, 7:1, 9:16, 9:24, 11:11, 18:25, 19:16, 20:9, 31:11, 31:25, 37:8, 41:16, 42:12, 44:17, 45:4, 46:2, 46:4, 48:5, 51:12, 51:13, 51:23, 52:6, 52:7, 52:9, 53:23
**parties'** [2] - 40:25, 41:25
**party** [3] - 31:24, 33:20, 36:6
**passage** [2] - 19:25, 44:24
**past** [7] - 4:12, 4:22, 6:24, 25:18, 25:22, 42:25, 50:5
**patience** [1] - 53:20
**pause** [1] - 10:14
**pending** [2] - 2:3, 6:22
**perhaps** [9] - 5:10, 6:1, 9:17, 17:2, 17:23, 20:21, 44:17, 51:19, 51:21
**period** [6] - 10:24, 17:9, 22:10, 25:14, 27:4, 44:4
**permitted** [1] - 9:7
**permitting** [1] - 13:16
**person** [5] - 34:17, 37:19, 38:13, 48:18, 49:11
**persons** [2] - 7:14, 27:16
**persuade** [1] - 18:15
**phase** [2] - 4:22, 31:12
**phone** [1] - 3:5
**place** [3] - 6:9, 9:6, 9:13
**plaintiff** [20] - 3:8, 10:1, 19:9, 20:14, 21:10, 21:12, 21:13, 21:14, 35:20, 37:11, 39:8, 39:11, 44:20, 44:22, 45:7, 45:15, 46:8, 46:24, 48:18, 52:14
**plaintiff's** [3] - 14:9, 20:21, 48:11
**plaintiffs** [24] - 2:9, 3:21, 6:16, 13:2, 15:16, 15:23, 16:9, 17:21, 19:20, 20:18, 21:3, 21:9, 21:16, 27:24, 31:17, 34:11, 34:12, 37:17, 40:18, 44:13, 47:11, 48:3, 48:9, 49:13
**Plaintiffs** [1] - 1:4
**PLAINTIFFS** [1] - 1:11
**plaintiffs'** [6] - 13:11, 15:3, 28:24, 33:14, 37:15, 50:19
**planning** [2] - 12:15, 49:21
**play** [1] - 38:6
**played** [1] - 30:4
**plays** [1] - 8:19
**please** [2] - 2:6, 14:24
**pleasure** [1] - 48:6
**plenty** [3] - 23:23, 26:16, 51:18
**plural** [1] - 40:5
**point** [22] - 6:21, 7:1, 8:14, 9:15, 10:2, 10:5, 10:6, 10:20, 11:5, 11:13, 17:6, 17:7, 20:19, 25:10, 27:6, 28:25, 29:10, 31:4, 31:8, 37:9, 50:5
**pointed** [1] - 32:5
**pointing** [1] - 25:24
**points** [2] - 29:12, 37:13
**pool** [1] - 10:9
**poor** [1] - 25:5
**position** [8] - 7:17, 11:22, 19:23, 20:2, 21:8, 37:5, 37:6, 39:6
**positions** [4] - 11:17, 13:4, 39:1, 41:1
**possible** [1] - 5:9
**post** [6] - 4:7, 22:4, 26:23, 41:10, 41:11
**post-discovery** [1] - 41:11
**posture** [3] - 10:9, 41:10, 48:8
**potential** [3] - 21:12, 31:6, 43:12
**potentially** [1] - 14:7
**practice** [7] - 4:8, 6:10, 41:11, 50:4, 50:8, 50:15, 51:25
**Pratt** [2] - 1:14, 1:18
**precise** [1] - 28:2
**precisely** [1] - 23:5
**prejudice** [1] - 21:12
**preliminary** [1] - 6:13
**prepare** [2] - 3:1, 6:10
**prepared** [2] - 6:7, 46:12
**preparing** [1] - 46:2
**present** [1] - 9:25
**presented** [1] - 16:23
**president** [1] - 52:20
**presume** [1] - 23:9
**pretrial** [2] - 3:16, 51:17
**pretty** [1] - 10:17
**primarily** [1] - 5:12
**primary** [3] - 4:15, 12:24, 22:2
**private** [1] - 53:4
**probably** [2] - 37:3, 47:13
**problem** [2] - 31:8, 39:5
**procedural** [1] - 3:3
**procedurally** [1] - 14:11
**Proceedings** [1] - 1:25
**proceedings** [2] - 51:11, 55:8
**PROCEEDINGS** [1] - 1:8
**process** [5] - 30:4, 33:24, 33:25, 34:25, 35:15
**processing** [3] - 15:22, 15:24, 16:6
**Produced** [1] - 1:25
**produced** [1] - 27:8
**product** [1] - 15:18
**productive** [1] - 3:4
**proffer** [1] - 23:7
**profit** [1] - 20:8
**project** [2] - 7:21, 14:18
**prone** [1] - 19:5
**proper** [1] - 14:11
**properly** [1] - 38:4
**properties** [3] - 27:13, 28:4

**property** [4] - 8:6, 19:11, 27:14, 42:22
**proposal** [1] - 52:21
**propose** [3] - 36:17, 47:9, 47:15
**proposed** [3] - 24:5, 52:8, 52:18
**proposing** [2] - 48:15, 51:14
**protect** [1] - 9:6
**protected** [1] - 9:9
**protections** [1] - 9:5
**prove** [1] - 32:12
**provide** [7] - 14:10, 14:12, 14:14, 19:1, 37:25, 52:7, 53:14
**provided** [1] - 45:16
**psychiatric** [9] - 15:1, 15:14, 31:16, 31:21, 32:21, 43:22, 44:2, 44:7, 45:12
**psychiatrist** [1] - 23:25
**public** [2] - 27:21, 30:10
**publicly** [1] - 52:20
**pure** [1] - 35:6
**purpose** [4] - 2:6, 13:12, 13:17, 44:15
**purposes** [2] - 43:4, 44:8
**pursuant** [1] - 5:7
**put** [10] - 9:5, 9:13, 33:10, 33:23, 37:4, 39:5, 46:11, 49:25, 52:22
**puts** [2] - 30:23, 34:24

## Q

**question** [10] - 7:22, 8:8, 9:14, 9:22, 10:15, 16:17, 24:20, 25:9, 46:3, 46:7
**questions** [7] - 9:16, 21:7, 45:22, 46:3, 46:4, 52:12, 52:14
**quite** [2] - 4:22, 28:8
**quoted** [1] - 22:6

## R

**R** [2] - 1:10, 2:1
**raise** [1] - 32:10
**raised** [12] - 17:5, 21:10, 25:11, 27:3, 27:6, 32:4, 32:18, 39:19, 41:13, 41:22, 41:23, 51:3
**raising** [3] - 17:6, 25:10, 26:25
**rambling** [1] - 10:20
**rather** [2] - 27:8, 30:10
**reach** [2] - 42:13, 53:11
**read** [2] - 5:23, 39:25
**reading** [1] - 10:16
**ready** [1] - 5:2
**real** [2] - 9:22, 34:24
**reality** [2] - 6:23, 38:5
**really** [21] - 4:20, 5:24, 6:1, 8:16, 9:13, 10:18, 11:2, 15:5, 19:19, 24:12, 26:3, 33:7, 33:8, 33:12, 41:16, 42:24, 43:10, 44:6, 44:9, 48:23
**realm** [1] - 28:15
**Realtime** [1] - 55:6
**reason** [2] - 18:14, 34:5
**reasonable** [8] - 7:7, 8:4, 9:5, 24:6, 33:14, 33:17, 34:8, 36:1
**reasonableness** [4] - 7:9, 7:18, 9:11, 9:12
**reasons** [3] - 4:1, 43:17, 43:25
**rebuttal** [7] - 35:20, 35:21, 48:10, 48:14, 49:1, 50:11, 51:15
**rebuttals** [1] - 52:8
**recent** [2] - 5:11, 8:11
**recognize** [2] - 38:17, 38:20
**record** [7] - 2:7, 3:3, 11:8, 12:12, 14:16, 38:5, 42:1
**recorded** [2] - 55:7, 55:8
**Recorded** [1] - 1:25
**recording** [2] - 55:10, 55:11
**Redd** [1] - 2:9
**REDD** [1] - 1:13
**refer** [1] - 39:23
**reflect** [1] - 7:11
**reflects** [2] - 7:18, 7:19
**refusal** [1] - 11:19
**refused** [1] - 14:10
**regard** [5] - 8:20, 45:10, 45:11, 45:13, 46:1
**regarding** [4] - 3:13, 29:3, 43:9, 43:10
**regards** [1] - 53:25
**Registered** [1] - 55:5
**reissue** [1] - 52:10
**rejected** [1] - 31:24
**rejection** [1] - 11:20
**relate** [6] - 5:5, 9:19, 10:18, 41:14, 42:11, 43:12
**related** [5] - 3:12, 22:15, 25:21, 41:18, 42:10
**relates** [1] - 42:13
**relationship** [3] - 6:23, 27:10, 28:7
**relevance** [7] - 8:7, 8:10, 9:24, 17:12, 25:24, 32:1, 32:3
**relevant** [16] - 3:3, 6:1, 8:17, 8:19, 9:19, 12:23, 13:8, 13:19, 16:20, 17:1, 17:19, 18:20, 22:24, 27:4, 32:21, 43:18
**relied** [1] - 39:11
**relies** [1] - 19:12
**rely** [2] - 9:24, 18:6
**relying** [2] - 19:13, 20:3
**remainder** [1] - 38:19
**remand** [2] - 2:20, 11:6
**removed** [1] - 22:18
**reopen** [9] - 2:22, 3:19, 5:3, 6:15, 9:21, 42:9, 42:24, 46:8, 53:22
**reopening** [5] - 4:21, 5:14, 10:10, 43:3, 44:1
**repeatedly** [1] - 7:15
**reply** [1] - 3:22
**report** [8] - 20:5, 45:16, 48:5, 51:13, 53:3, 53:10, 53:14, 53:23
**REPORTER** [2] - 55:1, 55:16
**Reporter** [2] - 55:5, 55:6
**reports** [2] - 45:8, 45:25
**request** [15] - 2:22, 2:23, 3:12, 4:5, 9:21, 12:9, 14:11, 23:25, 42:3, 42:7, 43:15, 43:21, 45:11, 45:12, 52:18
**requested** [1] - 7:10
**requirements** [1] - 8:3
**requires** [3] - 4:5, 42:4, 42:5
**residency** [1] - 13:17
**residing** [1] - 42:19
**resolution** [2] - 4:18, 41:12
**resolve** [9] - 2:25, 3:5, 5:5, 5:9, 9:23, 9:25, 30:17, 40:24, 42:6
**resolving** [3] - 5:19, 5:22, 10:12
**respect** [6] - 11:14, 37:17, 38:25, 39:7, 39:17, 39:20
**respond** [6] - 18:16, 20:20, 26:2, 39:3, 48:9, 48:11
**responding** [2] - 25:25, 49:2
**response** [11] - 3:21, 8:6, 15:3, 15:5, 19:20, 27:17, 28:17, 32:4, 32:18, 37:15, 48:24
**responses** [1] - 16:7
**restate** [1] - 28:6
**restrictions** [1] - 8:18
**restrictive** [1] - 3:13
**result** [2] - 25:6, 30:9
**resulting** [1] - 25:19
**ret** [1] - 33:22
**retaliation** [5] - 3:11, 16:20, 22:11, 22:15, 42:14
**retroactive** [1] - 33:22
**review** [1] - 3:24
**reviewed** [1] - 2:24
**revisit** [3] - 3:6, 6:8, 45:23
**right** [30] - 2:17, 10:7, 10:8, 11:16, 12:13, 12:16, 13:22, 15:4, 18:6, 18:11, 20:12, 20:14, 20:23, 20:24, 22:13, 33:15, 34:5, 34:21, 37:10, 40:16, 46:7, 46:11, 46:20, 47:9, 47:25, 48:25, 49:6, 50:3, 53:21
**rights** [1] - 29:19
**risk** [2] - 8:23, 19:10
**RMR** [1] - 55:16
**road** [1] - 11:15
**role** [1] - 42:21
**rolling** [1] - 49:25
**Roswell** [4] - 2:12, 24:14, 24:15
**ROSWELL** [1] - 1:22
**Roswell 's** [1] - 24:18
**Rule** [6] - 5:8, 23:1, 23:9, 23:10, 30:24, 31:22
**rule** [3] - 6:7, 31:1, 31:24
**ruled** [3] - 4:8, 4:10, 17:23
**rules** [1] - 7:13
**ruling** [8] - 5:3, 6:12, 18:6, 32:16, 46:4, 46:5, 46:8, 53:22
**rulings** [1] - 31:7
**running** [1] - 30:9

## S

**S** [4] - 1:10, 1:23, 2:1, 55:15
**said** [36] - 9:9, 14:10, 16:8, 19:8, 22:8, 22:13, 23:7, 23:18, 24:16, 24:17, 24:23, 24:24, 24:25, 25:4, 25:6, 26:4, 27:10, 27:19, 29:22, 30:6, 31:5, 32:6, 33:2, 33:12, 33:15, 33:16, 34:2, 34:3, 39:17, 40:13, 47:6, 47:16, 52:4, 53:1, 55:10
**same** [8] - 14:16, 16:18, 17:6, 24:22, 26:11, 31:5, 38:8, 43:25
**scale** [1] - 30:24
**schedule** [20] - 3:1, 4:3, 4:5, 6:11, 45:21, 45:23, 45:24, 48:25, 49:19, 49:20, 50:2, 50:22, 51:14, 51:16, 51:20, 51:23, 52:8, 52:11, 53:12, 53:23
**scheduled** [3] - 4:24, 50:3, 50:5
**scheduling** [8] - 3:6, 3:16, 4:20, 6:8, 51:17, 52:10, 52:25, 53:3
**schematics** [1] - 33:2
**school** [1] - 24:24
**scientific** [1] - 35:2
**scope** [5] - 3:25, 5:25, 9:18, 9:24, 17:1
**second** [2] - 42:16, 46:17
**secondly** [1] - 4:24
**seeing** [2] - 47:4, 47:7
**seeking** [10] - 8:4, 14:22, 18:18, 22:23, 25:12, 30:16, 32:12, 32:17, 42:8, 42:20
**seem** [3] - 14:5, 17:9, 33:21
**self** [1] - 16:5
**self-serving** [1] - 16:5
**senior** [1] - 3:10

**sense** [4] - 6:1, 44:16, 45:17, 51:20
**sent** [1] - 12:1
**separately** [1] - 34:16
**septic** [36] - 15:2, 18:22, 19:2, 19:7, 19:9, 19:12, 19:15, 31:16, 32:20, 32:22, 32:23, 33:10, 33:11, 33:12, 34:11, 34:12, 34:19, 37:13, 37:17, 37:19, 37:20, 37:23, 38:2, 38:4, 38:7, 38:24, 43:23, 44:10, 44:15, 45:13, 45:24, 46:21, 46:25, 47:11, 48:3, 52:6
**series** [1] - 23:2
**serving** [1] - 16:5
**set** [6] - 3:16, 6:9, 36:2, 47:2, 47:8, 49:14
**sets** [1] - 4:3
**setting** [2] - 2:21, 4:14
**settlement** [1] - 52:21
**several** [4] - 4:7, 14:22, 25:20, 42:10
**severe** [1] - 24:25
**shape** [1] - 27:19
**share** [3] - 5:15, 6:5, 41:3
**shareholder** [1] - 52:19
**shined** [1] - 29:4
**should** [12] - 9:7, 14:13, 14:15, 16:10, 17:3, 33:8, 36:18, 47:2, 49:8, 51:5, 53:1, 53:2
**shouldn 't** [2] - 11:25, 20:17
**show** [1] - 10:7
**showings** [1] - 7:5
**shown** [1] - 43:17
**shows** [2] - 9:10, 36:19
**side** [2] - 29:17, 33:20
**side's** [2] - 22:7, 26:6
**sides** [7] - 6:6, 20:7, 20:21, 26:7, 29:15, 45:14, 49:24
**significant** [2] - 4:19, 16:15
**simply** [4] - 11:8, 12:4, 22:12, 33:21
**since** [9] - 7:15, 11:12, 11:17, 12:5, 32:7, 39:10, 41:20, 52:23
**single** [1] - 3:13
**single -family** [1] - 3:13
**site** [2] - 32:25, 33:14
**sitting** [1] - 14:19
**six** [4] - 47:13, 47:21, 50:21
**skipping** [1] - 40:7
**Snipes** [1] - 30:25
**some** [24] - 3:3, 3:20, 5:10, 6:22, 7:6, 7:9, 8:6, 9:5, 10:14, 17:12, 17:16, 17:17, 19:22, 25:24, 27:16, 40:16, 40:20, 42:5, 42:13, 43:2, 44:14, 44:24, 50:6
**somebody** [3] - 22:20, 34:9, 48:22
**somehow** [1] - 38:3
**something** [23] - 10:8, 16:6, 16:22, 17:3, 17:13, 19:5, 21:22, 24:24, 27:8, 29:7, 29:12, 29:13, 29:15, 31:21, 32:4, 33:2, 37:21, 39:16, 43:2, 43:13, 48:19, 52:1
**sometime** [1] - 48:6
**somewhat** [1] - 15:6
**somewhere** [1] - 18:12
**son** [1] - 24:25
**sorry** [13] - 27:23, 28:10, 31:2, 34:14, 34:15, 38:14, 46:17, 47:5, 47:20, 47:23, 49:11, 50:23, 51:7
**sought** [4] - 4:1, 9:5, 9:12, 15:23
**sound** [1] - 18:7
**sounds** [6] - 9:17, 9:19, 10:21, 17:1, 49:23, 50:6
**SOUTHERN** [1] - 1:2
**spared** [1] - 35:18
**speak** [6] - 13:8, 20:17, 37:14, 43:5, 44:9, 44:14
**speaking** [1] - 48:7
**speaks** [1] - 13:9
**specific** [2] - 13:7, 16:21
**speculate** [2] - 20:5, 39:9
**speculating** [1] - 35:10
**speculation** [1] - 35:6
**spotlight** [1] - 29:4
**squarely** [2] - 24:16, 25:5
**Stacie** [2] - 2:11, 6:19
**STACIE** [1] - 1:17
**stage** [1] - 5:7
**staking** [1] - 11:22
**stand** [1] - 54:1
**standing** [2] - 5:17
**start** [3] - 30:9, 42:7, 50:3
**startling** [1] - 35:14
**starts** [1] - 35:25
**state** [4] - 22:9, 24:4, 26:12, 27:3
**statement** [1] - 16:5
**STATES** [2] - 1:1, 1:9
**status** [6] - 2:6, 39:18, 51:13, 53:10, 53:14, 53:23
**steps** [3] - 2:21, 5:21, 6:10
**Steve** [1] - 21:15
**STEVEN** [1] - 1:12
**Steven** [1] - 2:8
**stick** [2] - 37:10, 48:21
**still** [2] - 20:17, 36:13
**Stockholder** [1] - 40:6
**stop** [2] - 9:7, 40:2
**strained** [1] - 6:24
**streamlining** [2] - 44:18, 45:19
**Street** [3] - 1:14, 1:18, 1:23
**struggled** [1] - 44:10
**stuff** [2] - 8:15, 50:7
**subject** [3] - 11:21, 18:24, 31:2
**submit** [1] - 53:10
**substantial** [2] - 8:23, 33:9
**successful** [1] - 5:18
**such** [2] - 44:19, 45:15
**suffered** [1] - 15:22
**suffers** [1] - 16:6
**suggest** [3] - 38:3, 46:15, 50:9
**suggesting** [1] - 17:12
**Suite** [3] - 1:14, 1:18, 1:23
**summary** [20] - 4:8, 4:10, 4:18, 6:4, 10:19, 11:7, 11:10, 17:15, 25:3, 25:4, 25:7, 32:6, 36:7, 37:18, 37:25, 39:2, 41:12, 44:11
**supplement** [7] - 35:8, 36:18, 36:19, 44:20, 45:8, 45:16
**supplemental** [5] - 19:2, 32:24, 33:6, 35:13, 51:6
**supplementation** [2] - 50:10, 51:4
**supplementing** [3] - 45:25, 46:13, 49:16
**supplements** [4] - 48:5, 49:7, 51:15, 52:9
**supports** [1] - 11:1
**supposed** [3] - 11:2, 15:17, 15:24
**suppositions** [1] - 36:23
**Supreme** [1] - 31:24
**sure** [4] - 8:19, 10:10, 48:2, 49:19
**sword** [1] - 35:23
**system** [1] - 19:12

## T

**take** [13] - 3:2, 5:21, 9:15, 10:5, 13:5, 24:17, 24:19, 27:9, 31:4, 32:14, 37:9, 49:24
**taken** [6] - 10:4, 11:17, 13:4, 24:14, 31:8, 39:1
**takes** [1] - 13:21
**taking** [1] - 2:18
**talk** [14] - 2:19, 2:20, 15:9, 18:22, 19:18, 24:12, 26:15, 31:14, 32:1, 35:4, 38:13, 46:12, 49:11, 50:24
**talking** [11] - 10:3, 10:23, 22:11, 23:15, 23:19, 25:15, 26:20, 27:1, 31:6, 44:3
**tangential** [6] - 22:2, 22:25, 27:2, 32:2, 32:9, 32:19
**teenager** [1] - 32:8
**TELEPHONIC** [1] - 1:8
**tell** [1] - 24:20
**telling** [1] - 21:19
**tells** [1] - 51:4
**terms** [11] - 3:6, 7:7, 8:12, 10:12, 12:14, 23:1, 25:12, 31:12, 41:17, 41:24, 44:11
**test** [1] - 23:10
**testify** [2] - 16:11, 38:7
**thank** [21] - 2:18, 6:19, 11:4, 19:17, 20:24, 21:4, 21:6, 21:15, 28:22, 37:10, 37:16, 41:1, 41:7, 46:6, 52:13, 53:7, 53:17, 53:18, 53:19, 54:3, 54:4
**that's** [38] - 2:16, 8:12, 8:15, 9:13, 10:8, 10:10, 10:18, 10:25, 11:2, 11:12, 12:3, 12:16, 15:4, 16:18, 17:1, 17:13, 19:5, 20:23, 24:2, 25:25, 29:7, 29:13, 29:15, 31:8, 32:6, 33:15, 36:1, 36:8, 38:24, 41:1, 43:13, 44:6, 44:12, 46:20, 48:22, 50:10, 52:1
**theirs** [3] - 47:4, 47:7, 50:20
**them** [19] - 7:17, 11:9, 11:20, 20:17, 22:18, 22:19, 22:22, 25:1, 26:23, 26:24, 28:15, 34:18, 34:23, 34:24, 36:15, 36:23, 37:6, 38:1, 52:24
**then** [35] - 3:3, 3:5, 4:9, 6:7, 6:15, 6:16, 9:3, 9:7, 12:22, 13:12, 13:17, 14:18, 15:25, 18:13, 21:19, 24:22, 25:2, 25:9, 36:1, 36:22, 38:16, 38:20, 39:3, 41:4, 47:13, 48:1, 48:4, 48:9, 49:4, 49:6, 49:12, 50:1, 52:19, 52:23, 53:11
**theory** [2] - 15:6, 19:21
**there's** [8] - 22:5, 25:21, 30:17, 35:21, 35:22, 48:16, 53:5
**thereafter** [1] - 48:6
**thereto** [1] - 3:22
**they're** [18] - 20:8, 21:20, 21:23, 22:3, 23:10, 26:14, 30:18, 33:7, 34:8, 36:1, 36:8, 38:6, 41:25, 48:12, 48:18, 48:19, 48:21
**thing** [4] - 5:2, 5:15, 21:17, 31:5
**things** [19] - 3:16, 11:11, 16:14, 16:21, 17:10, 23:7, 23:8, 25:15, 25:20, 26:17, 31:10, 31:11, 36:24, 41:24, 48:12, 49:25
**think** [50] - 5:15, 7:23, 10:15, 10:17, 11:23, 12:14, 14:6, 14:20, 16:20, 17:25, 18:25,

19:9, 19:15, 19:22, 23:3, 23:24, 29:11, 29:15, 31:11, 35:7, 35:12, 36:18, 38:17, 39:25, 40:25, 42:13, 43:13, 43:18, 44:6, 44:9, 44:12, 44:15, 44:16, 44:17, 44:23, 44:25, 45:2, 45:17, 45:18, 46:6, 47:2, 49:20, 51:2, 51:4, 51:5, 51:18, 52:1, 52:25, 53:2, 53:4
**thinking** [2] - 6:16, 39:10
**thinks** [1] - 38:16
**though** [1] - 32:15
**thought** [4] - 4:2, 32:24, 35:15, 51:19
**thoughts** [1] - 31:19
**three** [7] - 15:7, 17:11, 20:25, 23:18, 31:15, 43:21, 49:5
**three-week** [1] - 23:18
**through** [7] - 4:7, 6:16, 33:1, 36:25, 48:1, 49:22
**thumb** [1] - 30:23
**ties** [1] - 26:9
**tightly** [1] - 26:9
**time** [49] - 2:18, 2:22, 5:21, 8:17, 8:22, 9:1, 9:7, 10:24, 11:7, 11:10, 12:10, 15:11, 17:9, 19:25, 21:4, 22:24, 24:13, 24:15, 24:16, 24:25, 26:11, 26:13, 27:4, 33:18, 33:23, 34:7, 34:25, 35:19, 35:24, 36:6, 36:23, 38:13, 39:9, 39:10, 39:11, 41:3, 42:25, 43:2, 43:8, 44:3, 44:24, 46:10, 46:12, 49:12, 49:20, 50:6, 50:21, 51:18, 53:20
**timing** [2] - 21:11, 48:16
**TOBIN** [39] - 1:17, 2:10, 6:19, 7:24, 8:21, 11:4, 12:16, 13:10, 14:9, 15:4, 15:13, 17:25, 18:18, 18:24, 19:19, 20:13, 20:16, 20:23, 21:1, 21:4, 37:16, 38:10, 38:24, 46:6, 46:15, 46:20, 46:23, 48:7, 48:20, 49:2, 49:4, 49:8, 49:14, 50:9, 50:18, 52:13, 53:9, 53:18, 54:3
**Tobin** [6] - 2:11, 6:20, 24:13, 33:11, 38:22, 49:12
**today** [7] - 2:6, 2:25, 3:5, 37:5, 45:8, 51:13, 53:20
**together** [2] - 49:19, 52:2
**told** [2] - 30:17, 35:1
**too** [6] - 36:15, 47:8, 50:7, 50:10, 54:3
**topics** [1] - 37:15
**towards** [1] - 5:21
**track** [2] - 41:13, 51:8
**Transactions** [1] - 37:22
**transcribed** [1] - 55:9
**TRANSCRIPT** [1] - 1:8
**transcript** [2] - 55:7, 55:10
**Transcript** [1] - 1:25
**Transcription** [1] - 1:25
**treat** [1] - 34:18
**trespass** [1] - 40:3
**trespassed** [1] - 40:10
**trial** [37] - 2:21, 3:1, 3:17, 4:14, 4:15, 4:24, 5:2, 5:5, 5:6, 6:11, 10:13, 10:16, 10:17, 12:9, 13:9, 16:1, 17:17, 23:18, 23:19, 26:6, 29:18, 31:13, 41:7, 41:13, 42:6, 43:4, 43:11, 43:19, 44:18, 45:17, 45:20, 46:1, 46:2, 46:14, 49:20, 50:5, 51:7
**trials** [2] - 23:2, 23:20
**trusts** [1] - 28:3
**try** [4] - 21:7, 23:10, 40:24, 49:18
**trying** [8] - 14:7, 17:9, 22:3, 22:20, 24:23, 30:18, 34:8, 52:1
**turn** [4] - 17:13, 21:3, 23:19, 50:24
**turning** [4] - 17:17, 17:19, 21:21, 43:21
**turns** [1] - 27:8
**two** [15] - 10:21, 14:5, 14:20, 23:18, 25:16, 26:21, 35:23, 37:13, 37:14, 38:20, 42:8, 44:9, 46:13, 50:11, 50:21
**two-way** [1] - 35:23
**two-week** [1] - 23:18
**type** [2] - 9:20, 17:23
**types** [1] - 28:2
**typically** [1] - 4:5

## U

**U.S** [1] - 31:24
**ultimately** [1] - 41:15
**unable** [2] - 37:6, 42:13
**under** [7] - 14:15, 23:9, 24:2, 24:9, 24:10, 30:6, 30:25
**understand** [16] - 3:25, 8:13, 8:14, 11:14, 13:8, 13:25, 14:8, 19:10, 19:16, 20:11, 21:7, 28:23, 44:12, 44:22, 48:12, 48:16
**understanding** [4] - 10:22, 14:24, 19:6, 38:18
**understands** [4] - 14:22, 31:17, 42:17, 43:1
**understood** [2] - 18:17, 27:11
**unfold** [1] - 36:24
**unilateral** [1] - 30:3
**UNITED** [2] - 1:1, 1:9
**unless** [1] - 13:14
**unreasonable** [3] - 23:8, 32:14, 45:2
**until** [1] - 49:4
**unusual** [2] - 18:19, 27:8
**unwillingness** [2] - 7:12, 23:15
**up** [18] - 6:5, 9:14, 22:3, 22:10, 22:22, 24:18, 24:20, 24:23, 30:14, 31:1, 32:9, 32:10, 35:18, 36:22, 41:24, 45:23, 50:16, 51:23
**update** [3] - 20:22, 44:24, 45:7
**updates** [1] - 53:24
**upon** [7] - 2:20, 4:25, 9:25, 13:21, 47:3, 47:5, 47:7
**upshot** [1] - 51:2
**us** [13] - 4:25, 5:24, 6:8, 19:1, 33:4, 33:5, 35:1, 39:6, 45:23, 47:3, 47:8, 49:5, 53:5
**use** [3] - 16:1, 22:20, 38:6
**used** [1] - 13:14
**using** [1] - 40:18
**usually** [1] - 52:25
**UVA** [2] - 24:15, 24:16

## V

**v** [3] - 1:5, 2:5, 30:25
**vacuum** [1] - 10:15
**valid** [1] - 29:23
**various** [3] - 22:22, 41:17, 52:21
**Venable** [1] - 2:11
**VENABLE** [2] - 1:17, 1:20
**ventures** [1] - 27:13
**very** [23] - 2:17, 15:21, 16:5, 17:13, 17:14, 19:17, 21:6, 22:8, 28:15, 29:16, 37:4, 38:11, 41:5, 41:8, 41:9, 43:19, 51:3, 52:15, 53:7, 53:15, 53:19
**veteran** [1] - 27:17
**via** [2] - 39:14, 55:8
**Vietnam** [1] - 27:17
**view** [11] - 6:21, 7:2, 10:2, 10:6, 11:11, 11:12, 12:2, 12:6, 28:18, 28:24, 39:12
**views** [2] - 21:13, 41:3
**violate** [1] - 40:18
**violated** [3] - 29:11, 29:24, 39:21
**violates** [1] - 13:12
**violating** [1] - 39:21
**violation** [10] - 13:18, 14:1, 14:7, 25:19, 29:24, 30:20, 30:24, 43:12
**violations** [1] - 25:17
**visited** [1] - 2:19

## W

**W** [1] - 1:19
**waive** [1] - 3:12
**walk** [2] - 6:16, 48:1
**want** [32] - 6:5, 6:13, 19:17, 20:19, 20:20, 21:2, 21:17, 23:1, 24:12, 25:9, 25:10, 29:8, 29:9, 31:14, 37:2, 37:3, 37:4, 37:14, 38:11, 38:18, 48:1, 48:5, 49:1, 49:7, 49:19, 49:22, 49:24, 50:2, 50:6, 50:18, 52:16
**wanted** [4] - 25:15, 29:7, 39:16, 52:17
**wants** [2] - 44:14, 45:1
**Washington** [1] - 1:21
**wasn't** [2] - 17:4, 49:21
**we'll** [9] - 6:16, 38:13, 38:17, 49:4, 49:12, 53:9, 53:10, 53:11, 53:21
**we've** [5] - 21:14, 22:6, 31:22, 32:18, 51:10
**Wednesday** [1] - 51:14
**week** [2] - 23:18
**weeks** [6] - 47:13, 47:21, 49:5, 50:11, 50:20, 50:21
**welcome** [1] - 30:9
**went** [2] - 4:6, 25:20
**weren't** [1] - 42:1
**what's** [4] - 8:19, 9:19, 12:13, 48:6
**whatever** [8] - 18:14, 20:7, 20:20, 21:20, 22:23, 23:19, 35:12, 36:19
**whether** [19] - 5:3, 7:6, 8:2, 8:3, 10:25, 12:17, 13:25, 16:12, 18:2, 18:3, 22:20, 30:17, 39:20, 39:21, 40:16, 40:17, 48:18, 48:21, 53:5
**which** [15] - 3:16, 5:19, 11:18, 12:20, 14:23, 15:7, 17:20, 19:1, 19:2, 23:10, 31:1, 31:21, 39:1, 40:6, 51:16
**while** [5] - 3:5, 4:25, 5:25, 6:21, 30:3
**wholly** [2] - 34:10, 43:5
**whom** [1] - 27:21
**whoops** [1] - 33:16
**why** [13] - 9:13, 14:6, 14:8, 15:10, 16:24, 17:22, 19:1, 24:18, 32:7, 32:10, 39:25, 48:12, 48:22
**wife** [1] - 27:14
**will** [33] - 3:7, 5:2, 5:13, 5:20, 6:7, 7:4, 7:6, 7:8, 7:17, 7:19, 9:3, 9:4, 9:18, 15:10, 17:25, 19:25, 20:1,

20:8, 23:19, 23:22, 26:4, 35:11, 36:17, 38:20, 43:18, 44:17, 45:3, 45:18, 48:2, 48:3, 49:15, 51:20, 53:3
**willingness** [1] - 8:18
**willy** [1] - 30:10
**willy-nilly** [1] - 30:10
**WILMER** [1] - 1:22
**wisely** [1] - 51:3
**wish** [4] - 6:14, 31:15, 45:14, 46:24
**wishes** [2] - 14:21, 43:22
**within** [5] - 7:7, 28:15, 34:23, 35:7, 50:20
**without** [3] - 7:9, 19:4, 33:13
**witness** [3] - 34:17, 44:15, 45:12
**witnesses** [2] - 50:21, 53:24
**won't** [1] - 18:7
**wonder** [1] - 50:22
**word** [1] - 32:12
**work** [10] - 5:1, 21:19, 32:15, 34:17, 38:3, 43:13, 49:18, 50:1, 51:4, 51:19
**works** [1] - 49:20
**worried** [1] - 48:22
**would-be** [1] - 12:25
**wouldn't** [2] - 14:12, 18:10
**wow** [1] - 33:7
**writing** [4] - 27:23, 46:11, 52:22
**written** [3] - 15:18, 16:7, 16:13
**wrong** [3] - 13:22, 14:25, 47:23
**wrote** [1] - 40:2

## Y

**yeah** [2] - 33:15, 49:8
**year** [4] - 3:15, 3:18, 8:20, 29:19
**years** [16] - 4:7, 4:12, 4:21, 6:22, 8:11, 8:15, 8:24, 10:24, 10:25, 17:11, 25:13, 25:21, 30:5, 32:7, 42:11, 42:25
**yes** [18] - 7:24, 11:22, 13:10, 15:4, 18:24, 19:19, 20:16, 23:4, 27:15, 28:20, 29:22, 30:6, 32:23, 34:3, 34:20, 35:1, 36:17, 50:9
**yet** [3] - 10:1, 11:21, 37:3
**yourselves** [1] - 2:7